THE STATE OF TEXAS, EX REL., v. F. C. COOK ET AL.

No. 3132.

1. **Unorganized Counties—Election of County Officers.**—Article 672, Revised Statutes, provides that upon specified terms it shall be the duty of the Commissioners. Court of a county to which an unorganized county is attached for judicial purposes to proceed without delay to the organization * * * of such county * * * in the same manner as is provided for the organization of new counties. Arts. 667, 668.

2. **Same Manner.**—The phrase "in the same manner" has been held to mean by the same proceedings so far as applicable to the subject matter. In article 672 it does not include *the time* of holding the elections, as in articles 667 and 668.

3. **Organization of Counties.** — The direction (in article 672) that what was necessary to the organization of the county upon the proper petition should be done without delay, evidences an intention that the provision as to time when elections directed to be held under the preceding articles (667 and 668) should not apply to elections to be held under article 672, and the provisions of article 1660 are sufficient to empower the proper officers to order the election to fix the date at which such election should be held, if not prescribed by law.

4. **Stonewall County, Organization of.**—Stonewall County was unorganized and attached to Jones County for judicial purposes. November 12, 1888, application was. made as indicated in article 672 to the Commissioners Court of Jones County for the organization of Stonewall County. The said court proceeded at once to order an election, taking the measures provided in articles 667 and 668, and December 24 declared the result of such election as to the several county officers. The officers so elected were qualified, and the county organization was effected. *Held*, in an attack against such organization that the organization was valid.

5. **Legislative Power to Create Counties.**—The Legislature, under the Constitution, article 9, section 11, is given power "to create counties for the convenience of the people." This is identical with the power granted in Constitution of 1869 to the Legislature "to establish new counties for the convenience of the inhabitants of such new county or counties." Art. 5, sec. 12.

APPEAL from Jones. Tried below before Hon. J. V. Cockrell.

The case fully stated in appellant's brief is given:

This is a quo warranto proceeding filed in Jones County District Court August 15, 1890, by leave of the judge of said court. The allegations of the petition are substantially as follows:

1. That relators were at date of filing of petition resident citizens, legal voters, and property owners in Stonewall County.

2. That respondents were also residents of said county.

3. That said county on December 20, 1888, was an unorganized county and attached for judicial purposes to Jones County, Texas, and has been since and was at the date of the filing of said petition.

4. That on November 12, 1888, a petition was presented to the County Commissioners Court of said Jones County, signed by 150 persons, praying for orders necessary to organize said Stonewall County.

5. That on said date the Commissioners Court made an order for an election to be held in said Stonewall County on December 20, 1888, for county and precinct officers in and for said county.

6.　That on or about November 13, 1888, the then county judge of Jones County prepared and had posted notices of said election.

7.　That on said December 20, 1888, an election was held in said Stonewall County.

8.　That December 24, 1888, the Commissioners Court of said Stonewall County made an order that said respondents were elected to the offices claimed by them respectively (except those afterwards appointed), and all of said respondents are claiming to be officers in said Stonewall County (giving offices respectively claimed by them) by virtue of said election.

9.　That there was no law authorizing such election on December 20, 1888, nor has there been any time since then when any legal election could have been held in said county; therefore said election is void, and said Stonewall County is not and never has been an organized county under the laws of Texas, and is still attached for judicial purposes to Jones County.

10.　That on December 20, 1888, respondents assumed the offices claimed by them, and still claim the right to hold them, except those appointed by the pretended County Commissioners Court of Stonewall County, organized under and by virtue of said election of December 20, 1888.

11.　That said County Commissioners Court since December 24, 1888, has been levying taxes on the property of relators and others in said Stonewall County, and John McLauren, respondent, claiming to be the tax collector of said county, has already collected many thousand dollars from relators and others as taxes, and J. M. Moore, respondent, claiming to be the treasurer of said county, has received and paid out, and is still receiving and paying out many thousand dollars of money so illegally collected as taxes from said relators and others; and said Commissioners Court has already pretended to contract upwards of $50,000 indebtedness against said Stonewall County, though the taxable value of all the property in said county is only $1,435,946, and said court is seeking to bind the property in said Stonewall County of relators and others for and on account of said indebtedness.

12.　That if not prevented by order of court said respondents will continue to assert their right to act as such county and precinct officers, and taxes will be levied against relators' property and collected from them, or their property sold as for nonpayment of taxes, thereby clouding relators' title to their said properties; and said respondents will continue to receive and appropriate to themselves salaries out of money so illegally collected as taxes; and that they are preparing to go through the form of holding an election in said county in November, 1890, for county and precinct officers, and unless prevented by order of the proper court will hold same, and so give color of title and authority to other parties to claim thereafter to be legally elected officers in said county.

The prayer was for process, and that the said election held on said De-.

cember 20, 1888, be declared void, and that judgment of ouster be entered, etc., and that Stonewall County be held never to have been legally organized, etc., and for costs, etc. The petition was duly sworn to by relators.

· All of the respondents named in the petition except Herbert Posey and J. F. Wood answered on September 3, 1890, when order was entered dismissing as to them. The answer of the other respondents was by special exceptions, general demurrer, and general denial.

. The case was heard on the pleadings on said September 3, 1890, and the court sustained the general demurrer and dismissed the proceedings; to which action and order relators excepted and gave notice of appeal.

. The purpose of the suit was and is to have this court determine whether or not said Stonewall County was organized according to law, and is now an organized county under the law, or is still unorganized.

The position of appellant is that there was no law which authorized any such election as was held in Stonewall County, December 20, 1888, and that counties in Texas can only be legally and constitutionally organized by elections held on the general (biennial) election day fixed by the Revised Statutes, article 1659.

· *H. L. Bentley, John Green,* and *D. L. Flint,* for appellant.— 1. As the laws regulating the organization of new counties in Texas give Commissioners Courts (except where there is no county judge) no jurisdiction to pass on the returns of elections held for that purpose, but make such returns returnable to the county judge, and make it his duty to pass on them and issue certificates to those elected, it appears quite plain that the Commissioners Court of Jones County had no authority to determine anything as to the election held in Stonewall County, December 20, 1888, and their action in the matter was void.

If an affirmative statute direct a thing to be done in a certain manner, that thing shall not be done in any other manner, although there are no negative words in the statute. Smith's Com., sec. 667; Paine on Elec., sec. 623, citing Sheafe v. Tillman, 2 Bart., 957, a case where a governor passed on election returns when not the returning officer, and his action was declared void. It may also be added in this connection that at all events the functions and powers of returning officers are ministerial and not judicial. McCreary on Elec., secs. 81–83, 85, 213; The State v. Steers, 44 Mo., 223.

County Courts being creatures of statute, endowed with special powers and created for special purposes, they can exercise only such powers as are expressly conferred by statute, or which are necessarily implied. 4 Am. and Eng. Encyc. of Law, sec. 3, citing 1 Idaho, 553. And their powers must be strictly construed. State v. Commrs., 25 N. W. Rep.,

91; Territory v. Gaskin, 6 Pac. Rep., 30; Jackson v. Hartwell, 1 Johns, 422; Rev. Stats., arts. 672, 673, 667–669.

2.    Elections for the organization of new counties in Texas must be held at the same time general elections are held, as provided for in Revised Statutes, article 1659.    Rev. Stats., arts. 1659, 1759, 667, 668, 672.

3.    The policy of our law under the Constitution of 1876 is to have as few elections as possible, and all at the same time, viz., every two years, as provided by the Revised Statutes, article 1659; hence no special elections for State officers by the people are provided for in this Constitution and in the Revised Statutes, and none for district officers, except Senators and Representatives, and none for county and precinct officers except in cases of tie.

As to filling vacancies.    Rev. Stats., arts. 246, 1089, 1143, 1146, 1513, 1518, 1519, 1536, 4515, 4532, 4613, 4694, 4730; Const. 1845, art. 7, sec. 34; Const. 1861, art. 7, sec. 34; Const. 1869, art. 12, sec. 24; Const. 1876, art. 9, sec. 1; Act May 1, 1874 (14th Leg., p. 188), as compared with Rev. Stats., art. 672.

County and precinct officers under the Constitution of 1876 and under the Revised Statutes must not only be elected at general elections held biennially, but they are elected and are entitled to hold for the full term of two years, and their terms begin when they receive their certificates of election.

The article and section of the Constitution and the section of the Revised Statutes controlling in this matter, as applying to the appellees herein, is given as to each county and precinct officer, as follows:    County Judge—Const., art. 5, sec. 15; Rev. Stats., art. 1133.    County Attorney—Const., art. 5, sec. 21; Rev. Stats., art. 245.    Sheriff—Const., art. 5, sec. 53; Rev. Stats., art. 4514.    Tax Collector—Const., art. 8, sec. 16; Rev. Stats., art. 4729.    Tax Assessor—Const., art. 8, sec. 14; Rev. Stats., art. 4693.    County Clerk—Const., art. 5, sec. 20; Rev. Stats., art. 1142.    District Clerk—Const., art. 5, sec. 9; Rev. Stats., art. 1100a.    Hide Inspector—Rev. Stats., art. 4611.    Justice of the Peace—Const., art. 5, sec. 18; Rev. Stats., art. 1533.    County Commissioner—Const., art. 5, sec. 18; Rev. Stats., art. 1509.    Constable—Const., art. 5, sec. 18; Rev. Stats., art. 4531.

See also Bradley v. Crabb, Dallam, 504; Roman v. Moody, Dallam, 512; Shelby v. Johnson, Dallam, 597; Banton v. Wilson, 4 Texas, 400; 5 Wait's Act. and Def., sec. 339; 23 Am. Rep., 180; Paine on Elec., sec. 194; 1 Gen. U. S. Dig., p. 366, sec. 38.

5.    The time of holding an election is a matter of substance, and when an election is held at a time not fixed by law it is void.    6 Am. and Eng. Encyc. of Law, p. 318, art. 9, sec. 1; Dickey v. Hurlburt, 5 Cal., 343; State v. Collins, 2 Nev., 351; De Armand v. State, 40 Ind., 469; People v. Brewer, 20 Ill., 474; Kerfield v. Irwin, 52 Cal., 164; State v. Young, 4

Ia., 561; Hoge's Case, 1 Cong. Elec. Cases, 135; 6 Am. and Eng. Encyc. of Law, note p. 320, p. 223 (referring to New Brunswick case) and notes, and art. 10, sec. 1, and authorities cited; Lead. Cases on Elec., pp. 448 (citing 19 Barb., 540; Commonwealth v. Meeser, 44 Pa. St., 343; Jacobs v. Murray, 15 Cal., 221), 254–258, 493; 10 Kans., 162; 33 Cal., 55; 15 Ohio St., 535; Paine on Elec., sec. 498; McCray on Elec., secs. 114, 260, citing 44 Cal., 442; 1 Kans., 273; 2 Kans., 115.

The following Texas authorities are in point as indicating the views of this court recently expressed in cases where attempts have been made to organize municipal and other public corporations in violation of law, such efforts being held to be not voidable but void: The State v. Dunson, 71 Texas, 65; Buford v. The State, 72 Texas, 182; Largen v. The State, 76 Texas, 323, Harness v. The State, 76 Texas, 566; The State v. Eidson, 77 Texas, 302.

6. The power given in Texas to district judges to fix times for holding terms of District Courts in newly organized counties is regulated by a statute which prescribes and limits the exercise of the official duty of such officers, and this statute ought to receive a strict interpretation in respect to the powers conferred and the manner of their exercise, and those powers are not to be enlarged by construction. The operative effect of this statute depends upon a contingency, viz., the organization of the county. And until a new or unorganized county is organized in accordance with law it is not organized at all, and remains in all respects subject to the county from which it has been taken or to which it has been attached for judicial purposes.

As to the creation of the county. Acts 15th Leg., p. 234.

As to assignment for judicial purposes. Acts 20th Leg., p. 79.

As to power of district judge to fix times for holding terms of District Court. Rev. Stats., art. 1128a; Ex Parte Mato, 19 Texas Ct. App., 120.

As to jurisdiction over county until organized. O'Shea v. Twohig, 9 Texas, 336; Clark v. Goss, 12 Texas, 395; Wilson v. Catchings, 41 Texas, 587. See also 4 Amer. and Eng. Encyc. of Law, p. 354, note 3, citing People v. McGuire, 32 Cal., 140, and The State v. Hart, 4 Ired., 222; 28 Gratt., 872.

7. There can not be an officer de facto where no officer de jure is provided for. 5 Wait's Act. and Def., 29, citing Carleton v. The People, 10 Mich., 258.

8. No term of the District Court can be legally held in any unorganized county. The State v. Bradford, 36 Kans., 530; State v. Kinzer, 20 Neb., 174.

9. A naked statutory power must in all things be strictly construed. Smith's Com., sec. 676; 28 Gratt., 872.

*Ed. J. Hamner*, for appellees.—1. Elections of officers for the purpose

of organizing an unorganized county are to be held without delay when the necessary petition, etc., has been presented; and the officers elected are only for the term from that time until the next general election.    Rev. Stats., art. 672.

2.    Where there is a de facto court its jurisdiction, acts, judgments, etc., are valid and binding; and there being at least a de facto District Court in Stonewall County at the time this suit was instituted, and all defendants being residents of such county, and all facts which would confer venue or jurisdiction upon any other tribunal being negatived, the District Court of Jones County had no jurisdiction of this cause.    Carleton v. The People, 10 Mich., 250;  Ruckman v. Lightner's Exr., 24 Gratt., 19; Pulaski County v. Stuart, 28 Gratt., 872.

STAYTON, CHIEF JUSTICE.—This is a proceeding by the State to test the rights of respondents to the offices of county and district clerk, sheriff and tax collector, county surveyor, county treasurer, assessor of taxes, and other county offices of Stonewall County which the respondents were respectively alleged to be unlawfully holding or pretending to hold.

The controversy arises out of this state of facts pleaded:

Prior to December 20, 1888, Stonewall County was an unorganized county, attached to Jones County for judicial purposes.

On November 12, 1888, a petition was presented to the County Commissioners Court for Jones County, signed by 150 persons, on which that court, after making the necessary orders, directed an election to be held in Stonewall County for the election of all county and precinct officers, at which all of the respondents, except some since appointed, were elected to the offices respectively claimed by them.    The county judge ordered the election and caused proper notice thereof to be given.

The Commissioners Court declared the result of the election on December 24, 1888, and since that time respondents, claiming to have been elected to the several offices, have performed the duties and exercised the powers thereof.

This proceeding having been brought in Jones County against respondents, who were alleged to be residents of Stonewall County, the latter presented the question of their right to be sued in the county of their residence by exception, which was sustained; and there can be no doubt of the correctness of this ruling, unless it be true that Stonewall County was never organized, and therefore continues for judicial purposes attached to Jones County.

The organization of Stonewall County raises the main question in the case, and as the court sustained a general demurrer to the petition as well as the exception to the jurisdiction, as also an exception to the effect that the judgment of the Commissioners Court for Jones County declaring the result of the election was conclusive of the fact that Stonewall County

was legally organized and the respondents entitled to hold the several offices to which they were elected, it must be understood that the court held the election held in Stonewall County to be valid or that the judgment of the Commissioners Court for Jones County was conclusive of that question.

It is contended by appellant that there was no law which authorized the holding of the election in Stonewall County on December 20, 1888, for the purpose of county organization, and that the law providing for such elections required them to be held on the general election day for electing all State and county officers as provided by article 1659, Revised Statutes.

That article requires general elections to be held biennially on the first Tuesday after the first Monday in November.

Article 1659 is the first in the title in which it is found, and article 1759, which is the last, provides that "the provisions of this title shall apply to all elections, whether for officers or for other purposes, when not otherwise provided by law."

Article 1660 provides that "special elections shall be held at such times and places as may be fixed by the law providing therefor, or as may be fixed by the authority empowered by law to order the same."

Articles 667 and 668, Revised Statutes, are as follows: "Whenever any new county shall be established it shall be the duty of the County Commissioners Court of the county from which the territory of such new county or the greater part thereof was taken, at least one month previous to the general election of county officers next after such new county shall have been established, to lay off and divide such new county into convenient precincts for the election of justices of the peace, county commissioners, and constables, defining particularly the boundaries of such precincts; and also to designate convenient places in such new county where elections shall be held; of all which they shall cause a record to be made by the clerk, and a copy thereof shall be transmitted to the county judge of such new county when elected.

"It shall be the duty of the county judge of every county from which any new county has been so taken, at least one month previous to the general election of county officers next after such new county has been established, to order an election to be held in such new county on said general election day for all county officers authorized to be elected by the people of such new county, and to appoint a presiding officer for each place designated in such new county for holding elections; such order of elections shall specify the number of precincts, their boundaries, and the officers to be elected in such county. Such presiding officers shall hold such elections in accordance with the laws regulating elections, and shall make their returns to the county judge who ordered such election, who shall open and examine such returns and give certificates to the persons elected."

Article 672, Revised Statutes, provides that "when any unorganized or disorganized county has been attached to another county for judicial or other purposes, and desires to be organized or reorganized, a petition expressing such desire, signed by not less than one hundred and fifty quali- fied voters residing in such unorganized or disorganized county, may be presented to the Commissioners Court of the county to which such unor- ganized or disorganized county is attached, and thereupon it shall be the duty of said court to proceed *without delay* to the organization or reor- ganization of such county, as the case may be, *in the same manner as hereinbefore provided for the organization of new counties.*"

Stonewall County was created by the act of August 21, 1876, and it was attached to Jones County for judicial purposes by the act of March 31, 1887.

It is therefore evident that an election for the organization of that county must be governed by the provisions of article 672.

It is contended, however, that this article required an election for the purpose of organizing the county to be held at the time general elections are directed to be held for the purpose of electing State and county offi- cers generally, and that an election held at any other time was void.

If this proposition be true it is fatal to the claim of respondents.

The Legislature has full power to determine when elections for county officers and for the organization of counties shall be held, and in view of the necessities that may arise has provided for holding elections special as well as those termed general.   Rev. Stats., arts. 1659, 1650.

It is contended, however, that this has been done explicitly by articles 667 and 668, Revised Statutes, in so far as elections for the organization of new counties are concerned, and that everything made necessary by these articles to a valid election is also made necessary to valid organization of unorganized counties, such as referred to in article 672; that all the pro- visions of the preceding articles are applicable to the latter.

It is obvious that these articles refer to counties differently situated, in which organization, however, becomes necessary to full exercise of the powers and performance of the duties for which counties are created, and it is unnecessary now to state what all the distinguishing differences are between the counties by articles 667 and 668 classed as "new counties" and unorganized counties attached to others for judicial purposes.

It is enough now to say that to the class last named article 672 applies, and upon its true construction rests the decision of this case.

As to such counties the Commissioners Court, when the proper petition is presented, is directed "to proceed *without delay* to the organization * * * of such county * * * *in the same manner* as hereinbefore provided for the organization of new counties."

This direction to *proceed without delay* indicates an intention to speed- ily give full county organization after this is shown by the proper petition

to be necessary; and if the Legislature had intended that no election for such a purpose should be held at a time other than a general election, it is singular that it commanded prompt action on the part of the Commissioners Court, when in many cases this could accomplish no good purpose if the period for holding a general election was distant. If the Legislature had intended that such elections should be held only at the time the biennial elections are required to be held, it would have been easy to say so, and in the absence of such a declaration the direction to "*proceed without delay*" ought to be conclusive that it was not intended such elections should not be held at any other time than the biennial elections, unless there be that in the context which shows to the contrary.

It is contended that the direction that such organization should be brought about "*in the same manner as hereinbefore provided for the organization of new counties*" clearly shows that the intention of the Legislature was that counties controlled by that article could only be organized through an election to be held at the time and in the manner prescribed by the preceding sections; that the word "*manner*" applies to the time at which the election must be held, as well as to the places and the machinery provided for its ordering and conduct.

It will be noticed that article 672 does not prescribe any of the details subsequent to the presentation of the proper petition necessary to county organization, but these things are provided for in the preceding articles.

These make it necessary for the Commissioners Court to lay off the territory to be organized into precincts for the election of officers named; to designate voting places therein; for the county judge to order the election for all county officers, and to appoint persons to preside over the elections; they provide for the vote, for the counting of it, and the issuance of proper certificates of election to persons elected.

These matters relate clearly to the manner, and it seems to us, looking to the whole statute, that it was only intended that as to these things the same acts should be performed under article 672 that are prescribed by the former articles. It has been said that the word "manner" is one of comprehensive signification, but that it ordinarily has reference to the mode of doing the act prescribed. Brown v. O'Connel, 36 Conn., 447; Willis v. Bain, 75 Pa. St., 54.

The phrase "in the same manner" was held to mean by the same proceedings so far as applicable to the subject matter. Phillips v. Commrs., 122 Mass., 260.

Cases may arise in which it would be clear that the time when an act should be done would be embraced within the general direction in a statute that the act be done in the manner prescribed in a statute referred to; but there is nothing in the statute before us showing such intention, but on the contrary the direction that what was necessary to organization should be done without delay evidences an intention that the provision as

to time when elections directed to be held under preceding articles should not apply to elections to be held under article 672, and the provisions of article 1660 were sufficient to empower the officers empowered to order the election to fix the date at which it should be held, if not prescribed by law.

It is suggested that the several provisions of the Constitution show that it was intended that elections for county officers should be held throughout the State biennially and at the same time in all counties, and in this construction we concur in so far as the Constitution applies to counties organized at the time biennial elections are held. As to such counties there is no provision for the election of county officers at any other time, but in case of vacancies occurring between such biennial elections provision is made for filling them by appointment.

From the fact that the terms of all county officers are fixed at two years and until their successors shall be elected and qualify, and the further fact that it is contemplated by the Constitution that county officers generally shall be elected throughout the State at the same time, it is contended that no election can lawfully be held to elect county officers, even in a county that has never been organized, at any time other than the time fixed for general or biennial elections.

It is urged if this be not so that biennial elections may be held in the several counties at different times, or that the terms of officers not elected at such biennial elections will be less than two years, when the Constitution fixes the terms of such officers at that period.

There would be much force in this proposition if officers other than those elected at biennial elections were subject to the provisions of the Constitution fixing official terms.

We are of opinion, however, that the Constitution does not undertake to fix the terms of county officers who are not elected at biennial elections for the reason that the county in which they are to serve was not then an organized county, except as their terms will be determined by the time intervening their qualification and the next biennial election.

The Constitution does not in express terms require biennial elections to be held in organized counties at the same time throughout the State for county officers, as does it for the election of senators and representatives; but we think, looking to all its provisions and to the ordinance passed by the convention in regard to elections, that this was intended, and such evidently is the construction placed upon it by the Legislature.

That body has also evidently construed the Constitution, in this respect, to apply only to such counties as may be organized at the time a biennial election is held.

The Constitution provides that "the Legislature shall have power to create counties for the convenience of the people, subject to the following provisions." Const., art. 9, sec. 1.

None of the provisions referred to have application to the question before us. Under the Constitution of 1869 the term of justices of the peace was fixed at four years, and vacancies were to be filled for the unexpired term by election. Const. 1869, art. 5, sec. 19.

Under that Constitution, as under the present, it was contemplated that justices of the peace should be elected throughout the State at elections to be held at the same time.

That Constitution had in it the further provision that " the Legislature shall at the first session thereof, and may at any subsequent session, establish new counties for the convenience of the inhabitants of such new county or counties." Const. 1869, art. 5, sec. 12.

The provisions of the two constitutions in respect to the matter before us do not materially differ.

In the case of Wright v. Adams, 45 Texas, 138, it appeared that at an election held for the organization of Waller County, on August 16, 1873, Adams was elected justice of the peace for precinct No. 1, and he qualified and was commissioned. A general election was held in the county on December 2, 1873, at which Wright was elected justice of the peace for the same precinct. At a general election held in Austin County in 1869, Wright was elected justice of the peace for precinct No. 3, Austin County. The territory of precinct No. 3, as laid out in Austin County, became in its entirety a part of Waller County, and precinct No. 1 in the county last named was wholly included in what was precinct No. 3 in Austin County.

Adams claimed the office under the election held in August, 1873, and Wright under the election held in December of that year.

In disposing of the case it was said: "New counties can not be established without the election and qualification of justices of the peace and other county officers, and as these new counties are to be established when the convenience of the people of the particular locality requires it, manifestly it would be impracticable to require the election of the officers at the regular period fixed for the election of the like officers throughout the State. Unless, therefore, the terms of justices of the peace elected on the organization of new counties are curtailed until the first ensuing general election or extended until the next general election subsequent to the expiration of four years from the date of their election, the general uniformity in the time of holding such elections which the Constitution contemplates can not be observed. It is unquestionably the duty of the Legislature to look to the object and purpose of the different sections of the Constitution which relate to the matter under consideration when called to legislate thereon; and when a strict and literal construction of each of its several provisions would lead to an apparent conflict which might be obviated by interpreting them in accordance with the object and spirit of their enactment, it is obviously its duty to pursue the latter course.

\*   \*   \*   Doing this in reference to the matter before us, we think it is obvious that the two main purposes shown in the Constitution in regard to the office of justice of the peace are general uniformity of time at which it is to be filled throughout the State, and general uniformity of four years for its tenure. Neither can be strictly and literally observed in creating new counties, if this is done at any other time than that fixed by law for holding general elections. The power and duty to establish new counties when required by public convenience can not, however, be doubted or denied. But in providing for the organization of such new counties regard should be had to these general objects and purposes, and conformity to them should be secured to as great an extent and at as early a time as practicable. And although it can not be said, strictly speaking, that the officers first elected in such newly organized county are elected to fill vacancies, we think the analogy may be held to apply to them, and that the Legislature very properly provided that the county officers which were authorized to be elected by the law creating said county of Waller should only hold office until the next general election for county officers, and until their successors should be elected and qualified."

Counsel for Adams asserted the same propositions asserted by counsel for appellant in this case, and we fully concur in the rules announced in the opinion quoted, which is conclusive of the proposition that the terms of office of county officers elected on the organization of a new county, unless the organization take place at a biennial election, is not fixed by the Constitution.

Counsel for appellant seeks to establish the proposition that the word "establish" used in the Constitution of 1869 does not mean the same as the word "create" found in section 1, article 9, of the present Constitution, but we are of the opinion that the two words are used in the same sense.

The county of Stonewall having been legally organized, the court below did not err in ruling that respondents were entitled to be sued in that county, and with that ruling the cause would have gone out of court without any ruling on the general demurrer, but the ruling made on that was correct.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered November 11, 1890.