HOLMGREEN v. PERKINS et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1914. On Motion for Rehearing, April 22, 1914.)

1. INTOXICATING LIQUORS (§ 30*)—LOCAL OPTION ELECTIONS—MUNICIPALITY SUBDIVISIONS.

Rev. St. 1911, art. 5715, provides for the holding of local option elections in commissioners' precincts, but provides that, where a school district, city, or town may be composed in part of two or more subdivisions of the county, the right to order and hold an election in such district, city, or town shall not be denied, provided, further, that no city or town shall be divided in holding a local option election for any of the other subdivisions named therein, nor shall any school district which has adopted local option be divided in a subsequent election held for any other of such subdivision covering a part of the territory of such school district. Article 5726 declares that, where prohibition has carried in any justice's precinct, no election shall be thereafter ordered in any town or city of such precinct until after prohibition had been defeated in a subsequent election ordered and held for such entire precinct. *Held*, that such provisions did not prohibit the holding of a local option election in a commissioner's precinct comprising part of a justice's precinct or any other local option district once established.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 37; Dec. Dig. § 30.*]

2. INTOXICATING LIQUORS (§ 31*)—LOCAL OPTION ELECTIONS—CREATION OF NEW COUNTIES—EFFECT.

Const. art. 9, § 1, empowers the Legislature to create new counties out of the territory of existing counties, and article 16, § 20, requires the enactment of a law authorizing the qualified voters of any county to determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits. *Held* that, since it is only after a new county is created that the article allowing the holding of local option elections applies to it, where a part of a justice's precinct was taken from a county in which local option was in force, and included in a new county, such change terminated the local option law in so far as it affected the territory carved out of the old county; and hence, after the new county had been organized, and a commissioners' precinct created from a portion of the former justice's precinct so incorporated into the new county, a new local option election was properly held in such commissioners' precinct.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 31.*]

Appeal from District Court, Jim Wells County; W. B. Hopkins, Judge.

Action by A. F. Holmgreen against W. R. Perkins and others. Judgment for defendants, and plaintiff appeals. Affirmed. Rehearing denied.

John A. Pope and Jas. M. Taylor, both of Corpus Christi, for appellant. I. A. Patton and J. E. Leslie, both of Alice, and Dougherty & Dougherty, of Beeville, for appellees.

MOURSUND, J. In 1877 an election was held in justice's precinct No. 3 of Nueces county to determine whether or not the sale of intoxicating liquors should be prohibited in said precinct. A majority voted "for prohibition," and the result was duly declared, and prohibition went into effect; all steps having been taken in accordance with the requirements of law. The Thirty-Second Legislature created Jim Wells county from a part of Nueces county; the part taken including a large part of said justice's precinct No. 3. Jim Wells county was divided into commissioners' precincts in accordance with the directions of the law creating it. Commissioners' precinct No. 1 is carved from that portion of said justice's precinct No. 3 of Nueces county contained in the new county, but does not embrace all of that portion of said justice's precinct No. 3 contained in such new county. In October, 1912, an election was held in such commissioners' precinct No. 1 to determine whether the sale of intoxicating liquors should be prohibited therein, at which election prohibition was carried, and the necessary steps taken and orders adopted to put the law in force. This is a suit brought by appellant against the county judge and county commissioners of Jim Wells county to contest said election.

The trial court concluded that, as said justices' precinct No. 3 had been divided into two portions, one situated in Nueces county, and the other in Jim Wells county, no election could be held in the territory originally composing said precinct, the Legislature having provided no method or means whereby said election could be ordered and held, and that consequently the original local option that existed by virtue of said election of 1877 became of no force or effect, and was repealed. He therefore held the election in commissioners' precinct No. 1 of Jim Wells county to be legal, and entered judgment against contestant.

Appellant's contentions, briefly stated, are as follows: (1) That the election in commissioners' precinct No. 1 was void because not held in the entire territory in which prohibition had been adopted in justice's precinct No. 3 of Nueces county by the election held in 1877. (2) That it was void because not held in all the territory out of said justice's precinct No. 3 embraced within the newly created county of Jim Wells.

The Court of Criminal Appeals, in the case of Marcaro Sandaval v. State, 162 S. W. 1148, opinion delivered January 14, 1914, held the election in said commissioners' precinct No. 1 of Jim Wells county valid; the court saying: "It is true that, if no other election had been held in said justice precinct, while it

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

was a part of Nueces county, and no election had been held in that part of said justice precinct which was cut off and made a part of Jim Wells county, after the latter county was properly organized, prosecutions under the law as put in force in 1877 in said justice precinct would still be in force, and a prosecution could be had in Jim Wells county, if the sale was made in that part of the justice precinct which had been made a part of Jim Wells county. Still we cannot believe the Legislature intended that Jim Wells county, after its organization, could not thereafter, in any of its proper subdivisions, hold an election and put the law in force as it existed at the time of said election, even though the territory embraced therein should be only part of the territory embraced originally in said justice precinct or any other part of the territory cut off from Nueces county. In other words, we are of the opinion that, when the Legislature created Jim Wells county, and it was properly organized, it could then hold a prohibition election in any of its territory authorized by law, and if prohibition carried, and the penalty at the time was different from what it had theretofore been in that part of the original county, such election and law, with the increased penalty, would then go into effect, even though such territory embraced only a part of the same territory where the original election had been held, and that the law by such latter election then put in force would control and supersede such law as theretofore was put in force while the territory was part of the other county."

The effect of this holding is: (1) That by the creation of the new county two districts were formed in which local option remains in force under an election held in the two at a time when they constituted a justice's precinct. (2) That the commissioners' court could legally take part of one of these two districts and make a commissioners' precinct out of it, and hold a local option election therein. (3) That local option law adopted in such commissioners' precinct supersedes the other law in the territory embraced therein. (4) That the old local option law remains in force in that part of the district situated in Jim Wells county not embraced in the commissioners' precinct. It would necessarily follow that a justice's precinct or school district may be carved out of the remaining portion of original justice's precinct No. 3 of Nueces county situated in Jim Wells county, and not embraced in commissioners' precinct No. 1, and local option elections may be held in such other districts.

The election in commissioners' precinct No. 1, had it resulted against prohibition, would not have destroyed the local option existing therein, if it was carried over from Nueces county. See Ex parte Pollard, 51 Tex. Cr. R. 488, 103 S. W. 878, and cases cited therein; Elliott v. State, 44 Tex. Cr. R. 575, 72 S. W. 837.; Griffin v. Tucker, 102 Tex. 420, 118 S. W. 635.

The Court of Criminal Appeals, in the Randall Case, 50 Tex. Cr. R. 519, 98 S. W. 870, held that no election could be ordered for a commissioners' precinct composed partly of a justice's precinct in which prohibition was already in force; and a reading of the opinion in the Mills (46 Tex. Cr. R. 224, 79 S. W. 557) and Elliott Cases (44 Tex. Cr. R. 575, 72 S. W. 837) leads us to conclude that prior to the decision in the Sandaval Case that court had always adhered to the view that, when prohibition had been adopted in a subdivision, no additional law could be voted therein, except by an election for the whole county. But, according to the Sandaval Case, the court has now held that, where local option is in force in a large territory, and subdivisions known to the law are created therein, the law does not prohibit the piling up of prohibition laws upon portions thereof by holding elections in smaller subdivisions contained therein. This holding appears to be justified by the decision of the Supreme Court in the case of Griffin v. Tucker, supra, in which the Randall Case was disapproved, and the rule announced that general power given in article 5715 (Statutes 1911) to hold elections in commissioners' precincts, not being qualified by statute to prevent its exercise in precincts in which there were minor subdivisions having local option in force, authorized the holding of elections in a commissioners' precinct composed of two justice's precincts in one of which local option was in effect. The following qualifying clauses are contained in article 5715: "Provided, that where a school district, city or town, may be composed in part of two or more subdivisions of the county, named hereinbefore, the right to order and hold an election in such school district, city or town, shall not be denied; and provided, further, that no city or town shall be divided in holding a local option election for any of the other subdivisions named herein; nor shall any school district which has adopted local option be divided in a subsequent election held for any other of such subdivision covering a part of the territory of such school district."

Article 5726 contains the following proviso: "Nor in any case where prohibition has carried in any justice's precinct shall an election * * * be ordered thereafter in any town or city of such precinct until after prohibition has been defeated at a subsequent election ordered and held for such entire precinct."

[1] These qualifications do not prohibit the holding of an election in a commissioners' precinct composing part of a justice's precinct or any other local option district once established; so it seems, under the ruling of the Supreme Court, such an election as is being considered in this case may be held under the general power given in article 5715.

The Supreme Court did not concede any importance to the fact that in the election considered by it an additional local option law was made effective in territory already under the law, and the fact that such is the effect of the election now being considered by us is therefore entitled to no weight, unless we find that the Constitution or statutes contain provisions which apply to the latter case, and not to the former. The Supreme Court held that the language, "determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits," used in article 16, § 20, of the Constitution, should not be given the effect given in the Randall Case, because to do so would enable a smaller precinct, by holding an election, to prevent the larger precinct, for two years, from holding an election, as contemplated by the first part of said article 16, § 20. The size of the subdivision cannot control, because local option might be adopted in a very large justice's precinct, and a very small portion of such precinct be in a commissioners' precinct smaller than such justice's precinct, yet the commissioners' precinct could hold an election, under the reasoning of the court in said case. To hold otherwise would be to deprive the commissioners' precinct of its right to an election; but no such reason can be urged in favor of permitting elections by which the law is again enacted by adopting it in a small precinct situated entirely within a larger one. By refusing to permit such an election, no one would be deprived of any rights. But, under the decision of the Supreme Court, we feel constrained to hold "that the right of each subdivision is given in the same language," and that therefore a subdivision may hold an election even though contained entirely in a larger one, despite the fact that those opposing prohibition have nothing to gain, and those favoring it have nothing to lose. We therefore hold that, if that part of justice's precinct No. 3 of Nueces county embraced within the boundaries of Jim Wells county became a part of the new county as territory in which local option remained in force, such fact would not render invalid the election contested in this suit.

[2] However, we do not agree with the Court of Criminal Appeals in its conclusion that local option was carried into the new county. We think the trial court was correct in holding the election valid because prohibition was not carried into the new county with the territory taken from the old. Article 9, § 1, of the Constitution empowers the Legislature to create new counties out of the territory of existing counties. Article 16, § 20, requires the Legislature to enact a law whereby the qualified voters of any county, etc., may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits. The law was enacted. It vests the power of calling such elections in the commissioners' court of the county in which local option is sought to be put into effect. When a commissioners' court of a county has legally ordered and held an election, local option remains in force in the territory in which such election was held until it is voted out by the qualified voters of the same territory. Under the Constitution, no one else can determine such question for said voters. But we do not think such construction of article 16, § 20, applies until the remainder of the same article applies. It is only after a county is created that the article allowing the holding of local option elections therein applies to such county. It was not intended that the qualified voters of one county could ever make a local law for all or a part of another county. If local option is carried into a new county by virtue of an election held in the old county, a subdivision of a new county may have a local law which the people living in that subdivision did not vote upon themselves, and would not have voted upon themselves had the matter been left to their decision. They would have a law, not adopted by themselves, but jointly by them and the qualified voters of another county. It cannot for a moment be contended that the creation of the county did not affect in any manner the status of justice's precinct No. 3 of Nueces county, and that local option could not be repealed in any part thereof without holding an election in all of it, because, were we to so hold, we would, in effect, hold that a part of the citizens of our state could be deprived of their right to repeal the law. Ex parte Fields, 86 S. W. 1022. No provision is made for the holding of an election in such precinct No. 3. It would have to be held in two counties, and no power is given to either to order or hold the same. Nor do we think the Legislature could give such power in view of article 16, § 20, of the Constitution.

We cannot avoid the proposition that the status of the precinct is affected by the creation of the new county. Then the question arises whether it is only to the extent of dividing it into two local option subdivisions, in which local option will be in force until voted out by the qualified voters thereof, or whether the part in the new county is free from the local law. Either holding does away with the rule that the law can only be voted off as it was voted on. We think, however, that said rule does not apply until the conditions exist which authorize its application, namely: That a county is created, and the law adopted therein, under orders by the commissioners' court of said county, and by vote of the qualified voters of the territory in which the election is held.

The power to create a new county implies the power to destroy the old to the extent that its territory is taken for the new county, and such destruction carries with it the local option law adopted therein while it was a part of the old county. We conclude that the local option law was not in force in

Jim Wells county at the time the election in question was ordered, and that therefore said election is valid. In support of this conclusion, we cite the following authorities, none of which are more than merely persuasive: Clark v. Goss, 12 Tex. 397, 62 Am. Dec. 531; Wright v. Adams, 45 Tex. 138; State v. Cook, 78 Tex. 415, 14 S. W. 996; Galveston v. Posnainsky, 62 Tex. 126, 50 Am. Rep. 517; People v. Morell, 21 Wend. (N. Y.) 575; State v. Donovan, 61 Wash. 209, 112 Pac. 260.

The judgment is affirmed.

### On Motion for Rehearing.

We overrule the motion for rehearing because fully convinced that the election is valid on the ground that local option was not carried into the new county with the territory taken from Nueces county. As to the conclusion that, under the holding of our Supreme Court in the Griffin v. Tucker Case, an election may be held in a small precinct entirely contained in a larger one in which local option obtains, we have great doubt. We would not so construe the law as an original proposition, and doubt whether the expressions contained in the opinion in said case justify us in assuming that the Supreme Court would so hold. Giving the statute a construction which would not impute to the Legislature the intention to permit the piling up of useless and expensive elections, we think it should be held that an election, cannot be held in a small precinct entirely contained in a large precinct in which local option is in force. Statutes, when the terms used are ambiguous, should be construed so as to avoid absurdity, hardship, or injustice, and to favor public convenience. Sutherland on Statutory Construction, § 324. Surely the permitting of elections which there would be little or no inducement for either side to attend would be something which should not lightly be imputed to the Legislature. We therefore base our affirmance upon the ground that the election was held in territory in which there was at the time no local option law in force.

The motion for rehearing is overruled.