EARNEST et al. v. WOODLEE et al.
(No. 1465.)

(Court of Civil Appeals of Texas. Amarillo.
Jan. 29, 1919. Rehearing Denied
Feb. 19, 1919.)

1. ALTERATION OF INSTRUMENTS &infin;8 — PETITIONS — MATERIAL ALTERATION OF SIGNATURE.

Retracing with ink the pencil signatures to a petition for the organization of a county, purpose being to preserve them from obliteration, is not a material alteration.

2. COUNTIES &infin;21 — ORGANIZATION — PETITIONERS—QUALIFICATION.

There was nothing to prevent one who became of age during the year 1917 to sign a petition for the organization of a county early in April, 1918, although he had not paid poll tax for 1917, and did not have an exemption certificate; Rev. St. 1911, art. 2954, not applying.

3. COUNTIES &infin;21—ORGANIZATION—PETITION —SIGNATURES.

Signatures of voters to a petition for organization of a county, affixed by a third person in their presence and at their direction, were valid.

4. ELECTIONS &infin;83 — VOTERS — PAYMENT OF POLL TAX.

Under Const. art. 6, § 2, art. 7, § 3, art. 8, § 1, Rev. St. 1911, art. 7692, poll tax becomes due on January 1st, and persons entering the state after such date need not pay such tax in order to be qualified voters.

5. COUNTIES &infin;21 — ORGANIZATION — PETITION—SUFFICIENCY.

A statement in a petition for organization of a county that the signers were "qualified voters of B. county" implies that they resided therein.

6. COUNTIES &infin;21—ORGANIZATION OF COUNTY—PETITION.

A petition for organization of a county need not describe the signers as qualified, if they were qualified in fact.

7. STATUTES &infin;120(1)—TITLE—ORGANIZATION OF COUNTY.

The caption of the amendment approved March 16, 1918, which reduced the number of signers required to secure organization of Bailey county, held to disclose the purpose of the act.

8. COUNTIES &infin;54—COMMISSIONERS' COURT—ORDERS—FORM.

The commissioners' court need not go through any particular form in passing its orders, and the suggestion by one member that certain action be taken upon a proposition, and assent by other members, in open session, is sufficient to authorize the entry of such action on the minutes.

9. COUNTIES &infin;21—ORGANIZATION—FORM OF ORDER.

An order entered in the commissioners' court reciting the presentation of a petition for organization of a county, "and the court being of the opinion that the petitioners are entitled to

the relief prayed for, and that B. county should be organized," and then proceeding to lay off the county into election precincts, etc., was sufficient under Rev. St. 1911, arts. 1356 and 1361.

10. COUNTIES &infin;21—ORGANIZATION—ELECTION.

Rev. St. 1911, art. 2933, relating to duties of county judge concerning elections, may be applied to an election relating to the organization of a county, in view of article 3081.

11. COUNTIES &infin;21—ORGANIZATION—ELECTIONS.

Under Rev. St. 1911, arts. 1356, 1357, 1361, 1362, 2911, 2930, 2933, the county judge may order an election of officers for a newly organized county without waiting until the next general election.

Appeal from District Court, Castro County; R. C. Joiner, Judge.

Suit by D. P. Earnest and others against B. D. Woodlee and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Kimbrough, Underwood & Jackson, of Amarillo, Carl Gilliland, of Hereford, and Kinder & Russell, of Plainview, for appellants.

Williams & Martin, of Plainview, and Mark Cowsert, of Dimmitt, for appellees.

BOYCE, J. Prior to the 9th day of April, 1918, Bailey county was unorganized, being attached to Castro county for judicial purposes. On said date the commissioners' court of Castro county, acting on a petition purporting to have been signed by 86 qualified voters of Bailey county, entered an order organizing said Bailey county and dividing it into election precincts. Thereafter, on the same day, the county judge of Castro county ordered an election to be held in Bailey county, on the 11th day of May, 1918, for the selection of a county seat of said county and for the election of county officers thereof. This suit was brought by appellant D. P. Earnest and others, citizens and taxpayers of said Bailey county, to set aside the said order of the commissioners' court organizing Bailey county, and to enjoin the county judge and commissioners of said Castro county from canvassing the returns and declaring the result of the election so ordered by said county judge, and also to enjoin the county officers elected at said election from qualifying and proceeding to act as officers of said county. It was alleged that the said order of the commissioners' court was void on several grounds, which we will later notice in detail, and that in consequence of the invalidity of this order the election itself was unauthorized and void, and that it was also void because ordered to be held at a time other than at a gen-

eral election. The county judge and commissioners of Castro county and the persons appearing to have been elected to offices in Bailey county were made defendants. A trial before the court resulted in judgment for the defendants, from which this appeal is taken.

By various propositions under the first assignment it is asserted that 21 of the 86 signatures attached to the petition on which the order for the organization of the county was made should be eliminated in determining whether such petition was in fact signed by 75 qualified voters of said county. It is conceded by appellees that two of the signers, to wit, Arthur Ryan, referred to in the third proposition under the first assignment, and U. S. Tabor, referred to in the ninth proposition, were not qualified signers. It will be necessary to notice in detail the facts in connection with the other 19 signers contested by appellant.

[1] Seven of the names to the petition had been signed in pencil, and one Kuykendall, who was taking an active part in getting the petition presented to the commissioners' court of Castro county, retraced these signatures in ink. Prior to the circulation of the petition the county judge had suggested that, as this matter might get into court, the signatures ought to be in ink, so that they would not become obliterated, and Kuykendall's purpose in retracing them in ink was to preserve them from obliteration. The retracing was so done as that only slight traces of the pencil marks might be observed. Appellant contends that this constituted such alteration or obliteration of these names as destroyed them as genuine signatures, entitled to be considered in passing on the sufficiency of the petition. We do not think the retracing of these signatures, under the circumstances, was a material alteration. Reed v. Roark, 14 Tex. 329, 65 Am. Dec. 127; Dunn v. Clements, 52 N. C. 58; C. J. vol. 2, p. 1220. We doubt also whether an alteration made by one standing in relation to the instrument as did Kuykendall would have the effect of avoiding an instrument of this kind. We do not decide this, however.

[2] Leon Kropff became of age during the year 1917, and was therefore not liable to the payment of a poll tax for that year. He did not have an exemption certificate issued prior to January 31, 1918, showing such fact, and it is claimed that he was not for this reason a qualified voter, authorized to sign the petition. We find no provisions of law that require the proposed voter to secure an exemption certificate under the circumstances stated. Article 2954, R. S., as it now reads, clearly does not apply to this situation. The cases of Linger v. Balfour, 149 S. W. 795, and Savage v. Umphries, 118 S. W. 901, section 3, are not authority on this proposition, because there was a material change in the language of the law as it now stands from what it was when being construed in those cases. See section 23, Acts 1905, p. 527, which was quoted in part by the decision of the court in the case of Savage v. Umphries.

[3] The names of Carl Elrod, Roy Elrod, and Sam Lane were not signed by them in person, but were signed by a third person in their presence and at their direction, and it is claimed that for this reason they should not be counted as signers. We overrule these propositions. Fulshear v. Randon, 18 Tex. 278, 70 Am. Dec. 281; Bridges v. First National Bank, 47 Tex. Civ. App. 454, 105 S. W. 1019; La Master v. Wilkerson, 143 Ky. 226, 136 S. W. 217; Reed v. City of Cedar Rapids, 138 Iowa, 366, 116 N. W. 140; 36 Cyc. 451.

[4] Three of the signers to the petition moved to Bailey county, Tex., from some other state in February or March, 1917, being prior thereto residents of other states, and did not pay a poll tax in Texas prior to February 1, 1918, and it is claimed that they were not qualified signers. In support of this contention appellant refers to article 7, § 3, of the Constitution, which provides that "a poll tax of one dollar on every male inhabitant of this state, between the ages of twenty-one and sixty years, shall be set apart annually for the benefit of the public free schools"; and claims that, under the authority of Solon v. State, 54 Tex. Cr. R. 261, 114 S. W. 355, 358, this provision is self-executing, and levies the tax without legislative aid; that these persons were, under the Constitution, if not under the statutory law, due a poll tax prior to February 1, 1918. If it be conceded that the Constitution does itself levy the poll tax, as intimated in the opinion referred to, several questions naturally follow: When does the annual tax thus levied become due? Shall it be paid in advance, during the year, or after the expiration thereof? It was evidently contemplated that the details of the levy, assessment, and collection of such taxes were to be provided by the Legislature. Article 8, § 1, of the Constitution, provides that "the Legislature may impose a poll tax." And other provisions of the Constitution required that taxes be levied, assessed, and collected by general laws. In 1902 the Constitution in relation to suffrage was amended, and a provision added to the effect "that any voter who is subject to pay a poll tax under the laws of the state of Texas shall have paid said tax before he offers to vote at any election in this state and hold a receipt showing his poll tax paid before the 1st day of February next preceding such election." Article 6, § 2. Long prior to the adoption of this constitutional amendment the Legislature had provided that the poll tax should be "levied and collected from every male person between

the ages of twenty-one and sixty years, resident within this state on the 1st day of January of each year" (Statutes of 1895, art. 5048, now article 7354); and that collection of taxes should begin in October following the levy and assessment (article 5164, R. S. 1895, 7615, Statutes 1911), and should become delinquent if not paid prior to February 1st following (article 7692, R. S. 1911, Acts 1897). It seems perfectly clear that the constitutional amendment was adopted in view of this established method of the levy, assessment, and collection of taxes. Following its adoption, the Legislature, by article 2942, R. S., provided that "the poll tax required by the Constitution and laws in force shall be collected from every male person between the ages of twenty-one and sixty who resided in this state on the 1st day of January preceding its levy. * * * It shall be paid at any time between the 1st day of October and the 1st day of February following." We hold, therefore, that these persons do not come within the provisions of article 6, § 2, just quoted.

It is claimed that one H. N. King, one of the signers to the petition, moved to Bailey county during the year 1917, having been a resident of Floyd county on January 1st of that year, and subject to the payment of the poll tax to that county, and that he did not pay any poll tax in Floyd county, but pretended to pay one in Castro county. It does appear that he resided in Floyd county on January 1, 1917, but the statement under this assignment is silent as to whether or not he paid any poll tax for 1917, and, if he did, where he paid it. It is not, therefore, shown that he was not a qualified voter in Bailey county.

We need not announce a conclusion as to the other contested signatures, to wit, those of J. M. Smith, J. M. Stokes, J. N. Jennings, A. C. Holt, and C. L. Gray, since, if we are correct in the conclusions already stated, whatever conclusion might be reached as to their qualifications would not affect the result. We therefore overrule the first assignment of error.

[5, 6] The petition for organization recited that the signers were "qualified voters of Bailey county," and it is claimed that this was insufficient to give the commissioners' court of Castro county jurisdiction to organize the county, because the law in reference to the petition on which such organization shall be made requires that the petition shall be signed by "qualified voters *residing* in such unorganized county." The statement that the signers were qualified voters of Bailey county carried with it necessarily the implication that they resided therein, as the qualification to vote would require that they reside in the county. The Legislature evidently did not intend to add something to the requirement that they be voters in such

county, but used the word "residing" as merely connecting the requirement that the signers be voters with the statement as to where they should be qualified to vote; that is, in the unorganized county proposing to organize rather than in some other place. We think, also, if the petitioners were qualified signers in fact, it would not be material that they did not so describe themselves in the petition. The law only expressly requires that the petition express the desire for organization. R. S. art. 1361. It would be a mistake, we think, to apply the rules of pleading in courts, which require plaintiff's petition to affirmatively show the jurisdiction of the court, to a case of this kind.

[7] It is also urged that the amendment approved March 16, 1918, Laws of the Fourth Called Session of the Thirty-Fifth Legislature, p. 18, which reduced the number of signers required to secure organization of such county from 150 to 75, is invalid. Appellants' brief does not suggest on what ground this claim is made, though it was suggested in oral argument that the caption of the law is insufficient. The caption seems to fully disclose the purpose and effect of the enactment and seems to us to be sufficient.

[8, 9] It is also contended that the order referred to was not valid because not regularly voted upon. The basis of this assignment is the testimony of the county judge to the effect that, after the presentation of the petition and hearing thereon, a consultation was had between the county judge and the two commissioners present, when he suggested that three of the names signed to the petition be counted off, and they proceeded to organization of the county, to which suggestion the two commissioners replied, "All right, we will do that." Whereupon such decision was announced to those present at the hearing. The order itself was prepared by the attorney representing the proponents of the petition, and it is not shown that it was read by the judge or commissioners prior or to the time it was spread upon the minutes. The minutes, however, were read over by the commissioners as a body, and approved by them before adjournment, and were regularly signed by the county judge. We see no reason why the order thus entered should not be held valid. There is no claim that it does not properly express the conclusion of the court, and we know of no law that requires the commissioners to go through any particular form in passing its orders. The suggestion by one of the members of the court that certain action be taken on a proposition before the court for action, and assent expressed thereto by other members in open session, seems to us to be sufficient to authorize the entry of such action on the minutes of the court as a proceeding had by it. It is also objected that

the order does not organize Bailey county. The order entered recites the presentation of the petition and continues thus: "And the court being of the opinion that the said petitioners are entitled to the relief prayed for, and that said Bailey county should be organized;" and then proceeds to lay off the county into the election precincts, etc. The statute does not provide the form of order, nor even say that an order organizing the county shall be entered, but provides that upon presentation of the petition the commissioners' court shall do the very things that this order does. R. S. arts. 1356, 1361.

[10, 11] Finally, it is contended that if the preliminary order of the commissioners' court, which we have been discussing, is valid, yet the order made by the county judge for the holding of the election in Bailey county, May 11, 1918, was invalid, first, because the county judge had no authority to order such election at all; and, second, if he did have such authority, such election could only be ordered to be held at the time of the holding of a general election. Article 1361, R. S., amended as we have already stated, provides that when a petition signed by 75 qualified voters residing in such unorganized county is presented to the commissioners' court of the county to which such unorganized county has been attached for judicial purposes, "it shall be the duty of said court to proceed without delay to the organization * * * of such county * * * in the same manner as hereinbefore provided for the organization of new counties." No other provision is found in the statute that relates specifically to this subject, and defines any further procedure in such cases. The organization of new counties, as referred to in this article of the statute, is provided for by articles 1356 and 1357 of the Statutes. Article 1356 provides that the commissioners' court of the county conducting the organization shall, at least one month previous to the general election of county officers next after such new county shall have been established, lay off and divide such new county into precincts, and designate convenient places in such new county where elections shall be held. Article 3657 provides that it shall be the duty of the county judge of the county conducting such organization, at least one month previous to the general election of county officers next after such new county has been established, to order an election to be held in such new county on said general election day for county officers and to appoint presiding officers. It is further provided that such presiding officers shall hold the election and make returns to the county judge who ordered the election, who shall open and examine such returns and issue certificates of election. Article 1362, R. S., also provides that it shall be the duty of the county judge of the county conducting the organization of

another county to issue certificates of election to the officers elected in such county, etc. It appears to us that it was the intention of the Legislature that in both classes of organizaion—that is, those provided by article 1356 and those provided by article 1361—the county judge should order the elections to be held in the newly organized county, and that such is the implication of the language used by the court in the case of State v. Cook, 78 Tex. 406, 14 S. W. 997. In that case the election was ordered by the county judge conducting the organization of the unorganized county, and ordered to be held at a time other than the general election, and these articles of the statute were being construed. It was held, in effect, that the laying off of a new county into precincts, the designation of voting places, ordering of the election by the county judge, returns of the election, and issuance of certificates of election related to the "manner" of the organization, but that the time for holding of the election did not necessarily relate to the "manner." It was pointed out that the provision that the court should proceed without delay to the organization of such unorganized county was inconsistent with the requirement of articles 1356 and 1357, that such elections should only be held at a general election, but that such "direction to proceed without delay indicates an intention to speedily give full county organization after this is shown by the proper petition to be necessary," and that the holding of the election was necessary to the full county organization referred to. These articles of the statute, as thus construed, were brought forward into the present statutes, and we think that the effect thereof is to authorize and direct the county judge, after the preliminary work of the commissioners' court, as provided by article 1356, has been done, to order the election without delay, which we take it would mean at as early a date as practicable, allowing time for the giving of the necessary election notices, etc. If there are other provisions of the statute that may be properly applied to such an election, and which fix the length of time and character of notice that may be required in such cases, we see no reason why the intended effect should not be given to these provisions of the statute. We find the following provisions in the statutes under the general title of "Elections," which may be relevant in this connection. Article 2911, R. S., reads as follows: "Special elections shall be held at such times and places as may be fixed by law providing therefor." Article 2930 reads in part as follows: "The county judge * * * shall order an election for county and precinct officers, and all other elections which under the law the county judge may be authorized to order." Article 2933, which is in part as follows: "The county judge * * * shall

cause notice of a general election or any special election to be published by posting notice of election at each precinct thirty days before the election; which notice shall state the time of holding the election, the office to be filled, or the question to be voted on, as the case may be; Provided, that in local option, stock law, and road tax elections, the notices of elections, or any other special elections specially provided for by the laws of this state, shall be given in compliance with the requirements of laws heretofore or hereafter enacted governing said elections respectively." Article 2911, just quoted, is the same as article 1660 of the Statutes of 1895, quoted by the Supreme Court in the case of State v. Cook, supra, except that the old law contained this additional clause following the present reading of article 2911, "or as may be fixed by the authority empowered by law to order same." Appellant suggests that the Legislature, by the dropping out of this clause in the revision of the statutes, deprived the officer ordering a special election of any power to fix the time for holding it, but that this must be provided by the law itself authorizing such special election. If we grant that this is true, nevertheless the law, as we have construed it, provides a method for designating the place of holding the elections of the character we are considering, and in effect that such elections shall be held "without delay" in reference to the time of the presentation of the petition and action of the commissioners' court thereon. Thus we think the law itself designates the time sufficiently. Obviously no law providing for special elections on petition would undertake to fix a definite date for the election, but would authorize that to be fixed in reference to the date of action on the petition and decision that an election was to be held.

We are cited to the case of Wallis v. Williams, 101 Tex. 395, 108 S. W. 153, as authority in support of appellant's assertion that article 2933 cannot apply to this election because said article was a part of the Terrell Election Law of 1905, and is not applicable to special elections. The holding in said case was based on a construction of section 194 of said act, and we do not find that such section was brought forward in the revision of the statutes so that the authority is not in point. We find that article 3081, under the chapter entitled "Miscellaneous Provisions," under the general title of "Elections," provides that "the provisions of this title shall apply to all elections held in this state except as otherwise herein provided." We think, therefore, that these general provisions of the statute may be applied to this election, and, when we construe the whole of the law on this subject together, we think that the election was properly ordered by the county judge without waiting until the next general election for such action.

This disposes of all the assignments presented. In our opinion, the judgment should be affirmed.

---

⬤⫸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes