THE CITY OF NEW HAVEN vs. THE NEW HAVEN & DERBY RAILROAD COMPANY AND ANOTHER.

New Haven and Fairfield Cos., April T., 1892.  ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

A railroad company, desiring to make an alteration in the location of its track that would involve the closing of parts of certain streets of a city, and serious injury to property on such streets, made a written contract with the city that, in consideration of no opposition being made by the city to the change of location by the railroad commissioners, it would refer all claims for damages to arbitrators to be appointed by a judge of the Superior Court and would within thirty days after the award pay the sums awarded. The contract was made at the request and for the protection of the property holders. The change of location was not opposed, and was approved by the railroad commissioners, and damages were awarded by the arbitrators. The railroad company not paying the awards, the city brought an action on the contract. Held—

1. That while the city could have entered into such a contract for its own benefit so far as any damage to the municipality itself was concerned, it had no power to do it for the benefit of private parties.

2. That the city had no power to act as trustee for such private parties.

[Argued April 19th—decided September 12th, 1892.]

ACTION to recover damages for a breach of contract;

brought to the Superior Court in New Haven County. The court (*F. B. Hall, J.,*) sustained a demurrer to the complaint, and rendered judgment for the defendants. The plaintiff appealed. The case is fully stated in the opinion.

*C. S. Hamilton* and *C. T. Driscoll*, for the appellant.

*S. E. Baldwin* and *W. Trumbull*, for the appellees.

FENN, J. In this action the defendants, the New Haven & Derby Railroad Company, and the Housatonic Railroad Company, having severally demurred to the amended complaint, which demurrers were sustained by the Superior Court, the plaintiff, by its appeal, has brought before this court the question of the sufficiency of the complaint. The material allegations are as follows:—The New Haven & Derby Railroad Company, having operated and located its railroad tracks through a portion of the city of New Haven, which tracks crossed at grade certain streets in the city, the company desired to make changes for its benefit, in order to obtain which they desired, subject to the approval of the railroad commissioners to close in part said streets, and thereby cut off travel on the same where they crossed their tracks. Such changes, if made, would greatly damage, and cut off from public travel and convenience, the property of many persons located on or near said streets, among whom are the persons named in the complaint; and the company knew that, unless provision was made by it for recompensing the persons whose property would be so injured by such closing, the city of New Haven, on behalf of such persons, and such persons themselves, would strenuously oppose such changes, and that, with such opposition, it would be impossible to obtain the same ; for which it had preferred its petition to the railroad commissioners ; notice of which had been given the city ; and which application to the commissioners had by the court of common council of the city been referred to a joint special committee of the council, and was pending before it. In order to procure from this joint special com-

mittee a recommendation to the court of common council of the passage of a vote that the city would make no opposition to the approval by the railroad commissioners of the location and proposed change desired, the railroad company, on February 14th, 1888, executed and delivered to the city a written contract, under seal, which was made at the request of the owners of said property and for their benefit and protection, by which the railroad company, in consideration of the joint special committee having unanimously recommended to the court of common council the passage of a vote that the city would make no opposition to the approval by the railroad commissioners of said location, did covenant and agree to and with the city that it would refer any and all claims for damages arising from the discontinuance of the streets, as described in said location, which might be made by any party or parties against the company, whether the parties did or did not own real estate abutting on said parts of the streets, to the final decision and award of three disinterested arbitrators, to be appointed by any judge of the Superior Court, on due notice to the parties claiming such damages, and would prepare all necessary papers to secure any such arbitration at its sole expense, free of charge to the parties claiming damages, and would abide by and perform whatever award might be adjudged to any party for any excess of damages over benefits that he might sustain according to such award, within thirty days from the award, together with the fees of the arbitrators as directed by the award. The committee did recommend the passage of such vote. The report was accepted by the common council and approved by the mayor. Afterwards, on October 15th, 1888, the railroad commissioners did, upon the application of said company, approve in writing, with a single alteration, an amended location, pursuant to which the company closed two of the three streets named and bridged the other. By reason of these changes certain property owners, named in the complaint, were, and their property was, greatly injured, and cut off from public access and travel, being the property owners for whose benefit and at whose request said contract

was made, all of whom had just claims for damages which ought to have been paid by the company ; but the company refused to pay upon request, or to submit said claims to arbitration, or to abide by their agreement. Afterwards, in August, 1889, the company leased its property and franchises to the other defendant, which assumed all its liabilities and obligations, and is now liable therefor. Afterwards, on May 9th, 1890, the parties claiming such damages and at whose request and for whose benefit the contract was made, having demanded payment, the plaintiff preferred its application in .their behalf, at their request and for their benefit, for the appointment of arbitrators, to a judge of the Superior Court, giving due notice, and said judge made such appointment,.and the arbitrators so appointed heard the claimants, who proved their claims before them ; and afterwards, on November 7th, 1890, the arbitrators made their award, awarding to the different persons named in the complaint, some thirty-five in number, the several sums therein stated, amounting in the whole to the sum of $22,867, the fees of the arbitrators for said services being $384. The arbitrators reported said awards to the court of common council of the city of New Haven, which accepted their report and the doings of the arbitrators in connection therewith ; and thereupon the plaintiff notified each of the defendants and demanded payment of the several amounts awarded to said several persons. And the said several persons likewise made demand, but the defendants refused to pay. And said several persons and claimants are ready and willing to accept the amounts fixed by the awards in full satisfaction of their claims and in full payment, and upon such payment to release the defendants from all further claim and liability on said accounts and matters. The plaintiff has paid the arbitrators their fees of $384.

There can be no doubt but that the performance of a public duty to lay out, make and maintain necessary streets within its limits, is imposed by law and rests upon the plaintiff city. And the interest of the city in such streets is commensurate with the duties imposed. The plaintiff would

therefore have the unquestionable right to appear upon such an application as that made by the Derby & New Haven Railroad Company to the railroad commissioners, as a party in interest, and to be heard in opposition to the same. And it would be proper for the plaintiff to stipulate, as a condition of the withdrawal of such opposition, that the company should do such acts, or make such compensation to the plaintiff, as should be a reasonable and just equivalent for any added burden, direct or indirect, upon the municipality, in consequence of any such change.

That the plaintiff should do this would be a simple measure of justice to its citizens and taxpayers. But this is not the case which the record presents to us. On the contrary, it expressly, and by repeated averments in the complaint, appears that the condition exacted in consideration of the withdrawal of opposition was required at the instance of private parties and for their sole and exclusive benefit and advantage. The interest of the city is therefor entirely irrelevant to the present consideration and must be wholly laid out of the case. Indeed, so far is the existence of such interest a justification for the action taken, that it may be truly and forcibly said that if the proposed change would result in benefit to the plaintiff, opposition to it ought not to have been made, and if in injury, ought not to have been withdrawn on any such ground as the complaint and agreement recite. The interest of the city, as such, begins where the interest of adjoining landowners ends, and ends where such private interest begins. Conceding that it is a part of the duty of the city to promote the convenience of the traveling public, it in no wise alters the proposition. If the change proposed in fact renders the streets of the city less convenient for public travel, compensation to landowners for damages sustained by their property neither lessens such inconvenience nor furnishes to the public any just equivalent therefor.

The case before us, therefore, considered in its true light, is that of the plaintiff exacting, as a condition of the withdrawal of an opposition which neither in its own behalf nor

in the interest of the general traveling public it claims to have had any reason to make, matters purely of private advantage to private parties, most of whom were indeed citizens of New Haven, but one of whom is stated in the complaint to be a corporation located elsewhere. It is true that the right of the plaintiff to make such a contract is not questioned in the very numerous grounds of demurrer presented in behalf of the defendants. It may have been thought that such an objection would come with a savor of ill grace from the defendant, who on the face of the record appears, for its own advantage, to have induced the making of the contract in question. But however that may be, since it underlies the decision to be arrived at upon other grounds which are stated, it is proper for us to consider it. And it would not be proper for us to neglect to do so if such neglect would lead to the possible inference of approval of action upon the part of a joint special committee of the court of common council of the plaintiff city, which, however pure may have been in fact the motive which inspired it in this particular instance, it would be entirely subversive of public policy to commend. That a public officer should regulate his official conduct by considerations of private benefit to himself or to others, can never, as we trust, receive the sanction, either express or tacit, of this court. And even if we were at liberty to pass this question of the validity of the consideration of the contract in silence, it would not avail the plaintiff. Could the city have a right of action at law for damages resulting from its breach? Clearly not in its own right. It could recover nothing which would go into its treasury and belong to it. *Kinne* v. *Town of New Haven,* 32 Conn., 210. But, indeed, the plaintiff does not claim this. The plaintiff claims that if the contract is valid, it creates the plaintiff the trustee of an express trust, namely, a person with whom a contract is made for the benefit of another, and that such a person may sue without joining the persons represented by him and beneficially interested in the suit. Gen. Statutes, § 886 ; Rule, 58 Conn., 561–562. But the reasons stated in

*Dailey* v. *City of New Haven*, 60 Conn., 319, apply with equal force in this case, and demonstrate that the plaintiff could not legally become such a trustee, and if such were the effect of the agreement under consideration, as we do not think it is or was intended to be, we should be compelled to hold it, also for that reason, so far forth at least, illegal and void. In the case just cited, in speaking of the rule that "municipal corporations have only such powers as are expressly granted in their charters or are necessary to carry into effect the powers so granted," this court said—"It is a rule of great public utility, and courts should recognize and enforce it, as a safeguard against the tendency of municipalities to embark in enterprises not germane to the objects for which they were incorporated." The wisdom of these remarks and the utility of this rule receive signal illustration in the case before us. If the position of the plaintiff is correct, the city is to be, (and, whether correct or not, it has been,) embarked in the enterprise of undertaking to collect, in its own name, and presumably at its own expense, separate sums of money due from one or both of these defendants to some thirty-five private parties for damages, involving expensive and doubtful and protracted litigation, in which it has already expended a considerable sum from its treasury in the one item of arbitration fees, not to speak of other and probably much greater outlays, and in which, in the event of its ultimate success in recovering judgment and in collecting any sum whatever as damages, it is manifest that, except in the most improbable event of such recovery being commensurate with the aggregate of the several sums claimed, the question of the proper apportionment of the sums collected among the various claimants, none of whom are alleged in the complaint to be willing to accept less than the entire sum severally awarded to such claimant, is likely to give rise to further questions and lead to further litigation. How is it possible that the city can derive any advantage from such litigation, in which the loss must be its own and the benefit enure to others? Would the court hesitate, at

the instance of a taxpayer, to enjoin the continuance of such proceedings ? And if not, would it not be because, even waiving the original invalidity of the contract, its enforcement by the city, as the trustee of an express trust, would be opposed to public policy and beyond its power ? It seems to us that if any right of action could accrue for the breach of the agreement in question, it must reside in the parties severally injured, and be exercised by them, and cannot be by the plaintiff in their behalf.

But the plaintiff further insists that, if any one has a right of action under the agreement in question, the demurrer should not have been sustained and the present suit dismissed. And the provisions of the practice rules are quoted. It is further said, and truly, that the want of proper parties is not alleged as a ground of demurrer. But, although our decision rests on other grounds, we will add that herein the plaintiff misconceives the true difficulty, which is not the want of proper parties. If the plaintiff is not such a party, there can be none for the cause or right of action alleged. There is no community of interest between the several claimants, and if each of them would have a cause of action for his separate damage, there can be no joint action maintained by all of them to recover such damage, unless the plaintiff, by reason of the contract, had a cause of action for the whole damage. No one else, there having been no assignment to the plaintiff or any one else, can have it. If the plaintiff has a right of action for the whole, such action is within the jurisdiction of the Superior Court. As to most of the several claimants, the amount of their several claims would be below the jurisdiction of such court. Clearly it would not have been the duty of the trial court to require or propose such an amendment of the complaint as should substitute one of the thirty-five claimants, whose claim was of a sufficient amount to place it within the jurisdiction of the Superior Court, suing individually and in his own behalf, for the present suit of the plaintiff. There would be but little semblance of similarity between the two.

The conclusions reached upon the question discussed render the consideration of the many other questions presented by the demurrers unnecessary.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.