ROBERT W. BRIDGEMAN *vs.* THE CITY OF DERBY.

First Judicial District, Hartford, October Term, 1925.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and JENNINGS, JS.

In construing a statute, the legislative intent rather than the letter should prevail, and to give effect to that intent, the statute should be read in the light of its object and the nature and reason of the remedy it provides; when one construction will lead to a public mischief which another construction will avoid, the latter will be favored unless absolutely forbidden by the terms of the statute.

In addition to the powers expressly granted to it, and those which are necessarily implied in or incident to such express grants, a municipality possesses all powers which are indispensable to the attainment and maintenance of its declared objects and purposes.

The test or standard by which the existence of implied municipal powers is determined, is constant and unchanging; but the conditions and circumstances of advancing civilization to which the test is applied are variable factors, and that which, at one time or in one generation, is not indispensable to the attainment and maintenance of its declared objects and purposes may well become so at another time or in another generation.

Whether a municipal board of aldermen, expressly empowered to "preserve order and peace" and "prevent vice and immorality" would have the implied power to employ private detectives to aid in the discovery and prevention of crime, under conditions

(1)

tending to promote the increase of lawlessness and the escape of the guilty, *quære*.

A municipal legislative department, possessing such a power by implication, could delegate its exercise, by reasonable order or ordinance, to a proper agency such as the prosecuting officials; but such officials, unless so empowered or unless independently authorized by the General Assembly, could not legally employ detectives.

Resembling in this respect twelve other of the twenty municipal charters in this State, § 108 of the charter of the city of Derby (Special Laws of 1921, p. 800) provides that "within the cognizance and jurisdiction" of the City Court, and "as may be provided and restricted by this Act," the City Attorney "shall exercise the same authority and perform the same duties as now provided by law for State's Attorneys in the several counties." *Held (Two judges dissenting)*:

1. That this section conferred upon the City Attorney the power, not exceeding the jurisdiction of the City Court, possessed by State's Attorneys under Chapter 185 of the Public Acts of 1919, "to employ suitable persons to make investigations regarding criminal offenses which he may have reason to believe have been committed or are about to be perpetrated, and to assist in procuring evidence for the State, and to prevent any unlawful interference with the cause of justice in civil or criminal cases."

2. That the portion of Chapter 185, thus defining the power of the State's Attorneys, and the portion conditioning its exercise "upon the authorization of the judges of the Superior Court, or any judge thereof," were separable and independent provisions; that the provision for judicial authorization determined when and under what conditions the power may be exercised, not what the power is; so that the City Attorney derived from the charter a power, co-extensive with that of the State's Attorneys, but freed from the condition of judicial authorization.

3. That a construction of the charter which should require the city prosecutor to secure the authorization of a judge or the judges of the Superior Court unfamiliar with local conditions, would be unreasonable because prejudicial to the public interest, opposed to the practical, contemporaneous construction of similar charter provisions for many years, and inconsistent with the fact that two of such provisions were enacted prior to the original passage in 1895 of the Act relating to the State's Attorneys.

4. That the absence from the charter of any provision for compensating detectives engaged by the City Attorney was not an obstacle to the implication of the power to employ them, since the law gives an officer or agent of a municipality the right to reasonable compensation if he acts (1) in a matter in which the

Bridgeman *v.* Derby.

municipality has an interest, (2) in the discharge of a duty imposed or authorized by law, and (3) in good faith.

5. That the power of the City Attorney to employ detectives and the power of the city to compensate them, were both subject to the implied limitation that they be exercised reasonably.

6. That the enactment of Chapter 344 of the Public Acts of 1921 forbidding an expenditure of more than $500 by a municipal corporation for the employment of private detectives unless certain designated conditions are fulfilled, constituted legislative recognition of the pre-existence of municipal power to contract for such employment.

7. That under § 108 of the Derby charter, the plaintiff in the present case was entitled to payment of his reasonable charges for services and expenses in obtaining evidence and securing the conviction of persons engaged in the illegal sale of intoxicating liquors and in gambling, his employment by the chief of police having been authorized and directed by the City Attorney and the judge of the City Court and a voucher for the payment of his bill having been prepared by the clerk of the court and approved by the judge and the board of finance.

8. That the plaintiff's recovery could not be supported upon the theory that the city had accepted his services and had thus ratified his employment, since the acts of the several officials who had approved his employment and his charges therefor, were insufficient to constitute acceptance and ratification by the city.

Argued October 8th, 1925—decided January 28th, 1926.

ACTION to recover the reasonable value of services and expenses alleged to have been rendered by the plaintiff to the defendant city as a detective in the investigation of crime, brought to the City Court of Hartford and tried to the court, *Ross, J.;* judgment for defendant, and appeal by plaintiff. *Error; judgment to be entered for plaintiff.*

*James W. Knox,* for the appellant (plaintiff).

*John J. O'Connell,* for the appellee (defendant).

WHEELER, C. J. The plaintiff seeks to recover for services and expenses incurred by him through sending detectives to defendant city of Derby for the pur-

pose of obtaining evidence and securing the conviction of persons engaged in the illegal sale of intoxicating liquor and gambling; as a result of such services a large number of persons were convicted of such illegal sales and gambling. These services were reasonably worth $180 and the expenses incident thereto, and were incurred by the plaintiff in pursuance of his employment by the chief of police of the city of Derby acting by the authority and direction of the City Attorney and judge of the City Court of the city of Derby. A voucher for the purpose of payment for these services and expenses was prepared by the clerk of the City Court providing for payment out of the appropriation for the City Court of Derby, which voucher was approved by the judge of the City Court, and by the finance board of the city of Derby. These sums have not been paid to the plaintiff.

The trial court reached the conclusion that there was, by the charter of the city of Derby, neither express nor implied power to make such employment, and overruled plaintiff's claims of law: "(1) By the terms of the charter of the city of Derby the City Attorney of that city was fully authorized and empowered to employ private detectives for the investigation of the commission of crime within the jurisdiction of the City Court of the city of Derby. (2) The city of Derby is liable for the payment of the reasonable charges and disbursements of such detective who has performed services and incurred expenses in such investigation at the request of the City Attorney of the city of Derby."

The appeal is from the overruling of these claims of law. Among the chief functions of the defendant municipality are the subjects expressly committed to the legislative authority of its board of aldermen, "to preserve order and peace" and to "prevent vice and

immorality." The powers which this and every municipality possesses are well defined in the law: "The powers expressly granted to a municipal corporation carry with them such other powers as are necessarily implied in or incident to such grants, and it also possesses all powers which are indispensable to the attainment and maintenance of its declared objects and purposes." *Crofut* v. *Danbury,* 65 Conn. 294, 300, 32 Atl. 365. Whether the employment of detectives by this municipality to ferret out crime would exist by fair implication from the general grant of power "to preserve order and peace" and "to prevent vice and immorality," in the absence of specific grant of power to make such employment, would be a question of most serious import. We may suppose a case. An industrial community of twelve thousand people, having few peace officers, has one incendiary fire after another, and this small police force is utterly powerless to cope with this situation. To run down this criminal or criminals and stop this series of incendiarism require the employment of men skilled in detective work, unknown to that community, and plain-clothes men instead of uniformed policemen. The increasing acumen and reckless wantonness of criminals, the facilities of escape due to modern methods of living and inventions, particularly the automobile, add to the difficulties of the task of apprehending such criminals. Is the community helpless to protect the life and property of its citizens by the employment of private detectives, by reason of the failure of the legislature to grant to the municipality express power so to do?

In many instances, and as early as 1750, as one of our eminent justices once pointed out, we have recognized the existence in a municipality or a town of a power by implication to do those things which are necessary to the attainment and maintenance of the objects for

Bridgeman *v.* Derby.

which its charter declares that it exists. In *Farrel* v. *Derby,* 58 Conn. 234, 245, 20 Atl. 460, the town, under its implied powers, was permitted to raise funds to resist an attack in the legislature upon its territorial integrity. In *New Haven* v. *New Haven & Derby R. Co.,* 62 Conn. 252, 255, 25 Atl. 316, the city, under its implied power, was held to have been authorized to oppose an application for changes in its location by a railroad company before the railroad commissioners, and to withdraw its opposition upon the payment of compensation for municipal interests endangered by this location. So in *Newton* v. *Hamden,* 79 Conn. 237, 64 Atl. 229, the town, under its implied authority, was held to have been authorized to employ counsel to defend a suit against the school visitors and school committee. We held in *State* v. *Cederaski,* 80 Conn. 478, 483, 69 Atl. 19, that the power to provide for the licensing and regulation of peddlers and hawkers necessarily implies, if it does not clearly express, the power of prescribing the amount of the license fee and of enforcing its payment. See also *Van Hoosear* v. *Wilton,* 62 Conn. 106, 108, 25 Atl. 457.

The standard by which to determine whether a municipality possesses by implication a certain power, viz., that it must be necessarily implied or incident to the powers granted, or indispensable to the attainment and maintenance of its declared objects and purposes, is unchangeable. But what is indispensable to the attainment and maintenance of its declared objects and purposes may change with changing circumstances. What might not have been implied at one time may be implied at another time. And we can well understand that the implication of a power to employ detectives might not exist in one generation, but might in another, through the growth of population, the congestion of living conditions, the multiplied increase or

dangers of criminal practices, and the easier evasion of detection arising through the agencies of human inventions. If this power is by fair implication vested in the municipal legislature, that does not mean that it is required in every case to itself act. Publicity of a proposed raid upon criminal offenders would defeat the purposes of the employment of the detectives. A power of this character may be delegated to an official by order or ordinance of the legislative department upon such reasonable conditions as it may determine. If this power exists by implication in the defendant municipality arising from the provisions of this charter, it is vested in the legislative department of its government and not in the City Attorney of this municipality. If the power to employ private detective, under which the plaintiff was employed, was vested in the City Attorney, it must be because of an express grant of power in the charter, and not by fair implication from the general powers expresssly granted to this municipality "to preserve the peace" and "to prevent vice and immorality."

The express authority of the City Attorney of the city of Derby to contract for the employment of the plaintiff, if it exists at all, must depend upon this section (§ 108) of its charter as found in the Special Acts of 1921, at page 800: "Within the cognizance and jurisdiction of said court, and as may be provided and restricted by this Act, said City Attorney shall exercise the same authority and perform the same duties as now provided by law for State's Attorneys in the several counties." What, then, is the meaning of, "said City Attorney shall exercise the same authority and perform the same duties as now provided by law for State's Attorneys in the several counties?" The State's Attorney exercises authority and performs duty in the employment of private detectives under the Public

Acts of 1919, Chapter 185, which reads: "Any State's Attorney, upon the authorization of the judges of the Superior Court, or any judge thereof, and the Prosecuting Attorney of any Criminal Court of Common Pleas, or District Court of Waterbury, with the approval of the court for which such Prosecuting Attorney is appointed, or of any judge thereof, may employ suitable persons to make investigations regarding criminal offenses which he may have reason to believe have been committed or are about to be perpetrated, and to assist in procuring evidence for the State, and to prevent any unlawful interference with the cause of justice in civil or criminal cases. The person so employed shall be allowed a reasonable compensation, to be fixed by the judge or court authorizing such employment, and paid monthly by the treasurer of the State in the same manner as costs in criminal cases." Under this Act, the State's Attorney's authority to act is subject to the authorization of the judges of the Superior Court, or any judge thereof.

As we seek to interpret this provision of defendant's charter, it will be well to keep before us some of the fundamental principles of statutory construction. The intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. *Brown's Appeal,* 72 Conn. 148, 150, 44 Atl. 22; *Stapleberg* v. *Stapleberg,* 77 Conn. 31, 35, 58 Atl. 233; *Wetherell* v. *Hollister,* 73 Conn. 622, 625, 48 Atl. 826. When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid. Sutherland on Statutory Construction (Ed. 1891) § 323; *Balch* v. *Chaffee,* 73 Conn. 318, 320, 47 Atl. 327. "A statute should be construed, having

in view the nature and reason of the remedy and the object of the statute, in order to give effect to the legislative intent." *Newton's Appeal*, 84 Conn. 234, 241, 79 Atl. 742. The court makes its search avoiding speculation, or the substitution of its view of what the statute ought to be for that expressed in it. The public mischief to be avoided, if this provision of the charter is construed in such a way as to support the right of the City Attorney to employ detectives in ferreting out crime, should be universally recognized. It is, in these days, upon occasion, a power indispensable to the effective administration of the criminal law. The power should be vested in the City Attorney and conditioned upon the authorization of the court of his appointment. Under Chapter 185 of the Public Acts of 1919, the State's Attorney's authority to act is subject to the authorization of the "judges of the Superior Court, or any judge thereof." Counsel for the defendant construes this provision of the charter as failing to give the City Attorney the right to "employ suitable persons to make investigations regarding criminal offenses," etc., because the authorization of "judges of the Superior Court, or any judge thereof," is not made a part of the "authority" which the City Attorney may exercise. The same construction, if correct, must be given to a similar provision in the charters of twelve other of the twenty municipalities of our State. The letter of this charter provision, if valid, gives to the City Attorney of Derby the powers exercised by the State's Attorney. It is manifest that no powers beyond the jurisdiction of the court of which he is the City Attorney, and none which are exclusively vested in the State's Attorney, were intended to be so granted. It is unnecessary to point out at this time the particular powers which could not have been intended to pass. The history concerning the duties and

powers of the State's Attorney, reviewed in *State* v. *Keena,* 64 Conn. 212, 214-216, 29 Atl. 470, will furnish sufficient guidance as to these. The statute conditions the authority of the State's Attorney to employ detectives upon "the authorization of the judges of the Superior Court, or any judge thereof." We do not think a provision for such authorization can be supplied by implication by reading into the charter provision this condition of authorization. As we have pointed out, thirteen of the twenty municipalities of Connecticut contain the same, or substantially the same, provision as the charter of the city of Derby which we have under consideration. It is inconceivable that the legislature intended that the employment of detectives should be subject to the authorization of "the judges of the Superior Court, or any judge thereof." To such a course there are practical considerations which weigh most strongly against this construction. The judges are not familiar with the local problems of the several municipalities, and the burden of making an investigation of a matter which the local judge could much better determine ought not to be imposed upon them. Matters of this character require speedy and secret action. By the time the City Attorney had made his application to the Superior Court judges, or a judge thereof, and the judges or judge had made examination, the evidence of the crime may have been obliterated or covered up, the criminal have made his escape, and the occasion for action have passed. "The judges of the Superior Court, or a judge thereof," would be required to grant the authorization to a City Attorney, whom they or he do not appoint, to do something of which they or he can have no control and quite likely will never hear of again, unless in a casual way. No instance can be found, we understand, where the Superior Court or a judge

thereof has granted or been asked to grant such an authorization. Contemporary usage here, as generally, is persuasive evidence of legislative intent. We cannot supply by implication this provision, nor do we think the legislature ever intended it to be supplied. That this provision of these charters was not intended to be made to depend upon the authorization of "the judges of the Superior Court, or a judge thereof," is apparent when we ascertain that the Act relating to the State's Attorney's employment of detectives was enacted in 1895, while in at least two charters of our municipalities, Danbury and Rockville, enacted in 1889, this provision is to be found. Special Acts of 1889, p. 1016, § 67; Id., p. 890, § 58.

Two additional theories supporting the plaintiff's position must be considered. The first is that the defendant ratified the services rendered and the expenditures made by the plaintiff, by its acceptance of them. The court finds that these services and expenses were reasonable, and that they were authorized by the City Attorney and the judge of the court appointing him, and approved by the judge of the City Court and the board of finance of the defendant, the city of Derby. Under the charter, the acts of these officials would not be sufficient to constitute a ratification if, instead of services, the items comprised the purchase price of property. Whether the acceptance and use of the services would constitute a ratification is not determined upon the same principle as the acceptance and use of property. Some authorities hold: "In reference to money, or other property, it is not difficult to determine, in any particular case, whether a liability with respect to the same has attached to the city. The money must have gone into her treasury, or been appropriated by her, and when it is property other than money, it must have been used by her, or be under

her control. But with reference to services rendered, the case is different. Their acceptance must be evidenced by ordinance [or express corporate action] to that effect. . . . If not originally authorized, no liability can attach upon any ground of implied contract. The acceptance, upon which alone the obligation to pay could arise, would be wanting." *Argenti* v. *San Francisco*, 16 Cal. 255, 283; 2 Dillon on Municipal Corporations (5th Ed.) § 794. Others hold, although there is some authority to the contrary, that when the contract is made by the wrong officer, if the municipality receives the benefit of the contract, it may be held on an implied contract for the value of the benefits conferred. 3 McQuillin on Municipal Corporations, § 1178. and cases cited, note 64. In this case there is nothing in the record to indicate that the city of Derby knew of the authorization of the contract for plaintiff's services, or voluntarily accepted the benefits with knowledge. So that on no theory thus far adopted by the courts can plaintiff's claim be supported upon the doctrine of ratification.

While we cannot sustain plaintiff's claim upon the grounds thus far considered, we are of the opinion that it can be sustained upon further grounds, which we purpose now to discuss. When the authorization to employ detectives is granted to the State's Attorney by the judges of the Superior Court, or any judge thereof, his exercise of authority and his performance of public duty are his own. He selects the persons to act, he directs them as he wills, he determines what is to be done and how, and the scope and length of time of the employment. When the same authority which the State's Attorney exercises is conferred upon the City Attorney of the city of Derby, it is precisely as if the charter provision had read: The City Attorney shall have authority to employ "suitable persons to make

investigation regarding criminal offenses which he may
have reason to believe have been committed or are
about to be perpetrated, and to assist in procuring evi-
dence for the State, and to prevent any unlawful in-
terference with the cause of justice in civil or criminal
cases." The authorization of the "judges of the Su-
perior Court, or a judge thereof," determines when
the State's Attorney may exercise this power. It does
not determine what the power is, but under what
condition it may be exercised.

The charter provision gives to the City Attorney the
powers exercised by the State's Attorney; it does not
condition their exercise upon the authorization of the
"judges of the Superior Court, or a judge thereof," or
in any other way. Two entirely separable and inde-
pendent facts are found in the statute conferring this
power upon the State's Attorney: (1) The conferring
of this power upon him; (2) the judicial authorization
of his exercise of this power. The legislature could
confer this power upon the City Attorney to be exer-
cised with or without the authorization of a judge or
judges. It chose to confer the power upon the City
Attorney without the authorization of the judge of the
court of his appointment. It gave to him the same
power the State's Attorney has in employing detectives
without conditioning its exercise upon the authoriza-
tion he was required to obtain. The charter provision
would have better accorded with legislative practice
if the City Attorney's power to employ detectives had
been made contingent upon the authorization of the
judge of the court which appointed him. The omis-
sion to have so provided may have been an oversight, or
it may have been that the legislature did not esteem
this authorization essential since the City Attorney was
the appointee of the judge and in daily contact with
him and would naturally act in accordance with his

will and in an important matter of this character only upon his approval. The objection to the charter provision for the reason that it does not restrict the City Attorney either in the extent of the employment or the expense to be incurred, we regard as based upon a misconception of the law. In the Act providing for the employment of detectives by the State's Attorney, provision is made for their reasonable compensation. In the section of the charter of the defendant city providing for the employment of detectives, there is no express provision made for their reasonable compensation. But this is no insuperable obstacle. The law will imply a liability to pay reasonable compensation, if the plaintiff was acting (1) in a matter in which the city of Derby had an interest, (2) in the discharge of a duty imposed or authorized by law, and (3) in good faith. "The officer or agent of a municipal corporation may be legally indemnified, provided he has acted in good faith in the discharge of his official duty in a matter in which the corporation has an interest and with respect to a duty imposed or authorized by law." *Gregory* v. *Bridgeport,* 41 Conn. 76, 84. It follows that the law places upon the employment authorized by the City Attorney and the compensation to be paid therefor, the limitation that they be reasonable. The further objection, that services and expenses of this character should be paid by the State and not the local community for whose especial benefit the services are rendered, is at variance with the policy of the State and wholly without merit. A construction which reaches this result accords with the intention of the framers of the charter provision. Continuously from 1889, through 1925, the General Assembly has enacted similar provisions for the thirteen of the twenty municipalities of the State to which we have referred; this is a clear indication of the legislative belief in the

all-embracing conferment of the power of this provision upon the City Attorney, so far as the powers of the State's Attorney can be conferred upon him. Again, in Chapter 344 of the Public Acts of 1921, the General Assembly expressly recognizes that municipal corporations have the power to employ private detectives in the investigation or detection of crime at an expense of not more than $500 unless a specific appropriation therefor shall have been made and unless the authorities thereof shall have first applied to the State police for assistance in such investigation and waited a reasonable time for the State police to act. Is it likely that the law-making power would have made this recognition of a municipal power as to such expenditures up to $500, unless it believed that this very power existed in these municipalities? The finding of the trial court establishes that the services and expenses incurred by the plaintiff were incurred upon the authority of the City Attorney and upon the approval of the judge of the City Court of Derby, and that the bill for the same is reasonable and has been approved by these public officials as well as by the finance board of Derby. It also shows that the services rendered were necessary for the public order, and beneficial to the people of this municipality. A construction of the charter provision upholding the power of the City Attorney to employ private detectives for the same purposes for which the State's Attorney may employ them, is in the interest of the good order and peace of the defendant community, and at the same time secures for the twelve other communities of the State similar protection and benefit. The construction we accord to this charter provision carries out, we believe, the legislative will and serves the cause of order and peace in the State.

There is error, the judgment is reversed, and the City

Court of the city of Hartford directed to render judgment for plaintiff for $300, with interest from June 22d, 1923.

In this opinion CURTIS and HAINES, Js., concurred.

MALTBIE, J. (dissenting). Plaintiff's bill for services is no doubt just, and a grant of power to City Attorneys to employ detectives is very probably salutary. But these considerations are of less consequence than are the need of a logical interpretation of the statutes in question and a close adherence to the legislative intent expressed in them. The majority opinion reaches its conclusion by divorcing the power to employ detectives given to State's Attorneys by the statute, from the requirement in that same statute that the power be exercised only upon the authorization of the judges or a judge of the Superior Court. But this is not a situation where a power emanates from one source and a prerequisite to its exercise springs from another and independent source; both power and condition draw their strength from the same legislative Act; the case is one, not of a power and a condition, but of a conditional power. Power and condition are too closely wed to be sundered. The majority opinion concedes that the provision requiring the authorization of the judges or a judge of the Superior Court, before a State's Attorney can act under the statute, is not capable of application in the case of a City Attorney; hence the power to employ detectives, if it exists in him at all, is a power subject to no condition—save, perhaps, the limitation arising out of the necessities of the case, that the City Attorney act reasonably. The result is, not to give the City Attorney "the same authority" as the State's Attorney, but to give him a very different and possibly larger authority. State's Attorneys exercise many functions which a City Attorney, from the

essential limitations of his situation, cannot ·perform. Into the provision of the charter that the City Attorney "shall exercise the same authority and perform the same duties" as State's Attorneys, should be read a restriction, inherent in the very necessities of the case, that the only powers and duties intended are those which are adapted to the legal position of the City Attorney as the prosecutor of the City Court. *Cobb v. Lincoln*, 15 Neb. 86, 17 N. W. 365; *Phillips v. County Commissioners*, 122 Mass. 258, 260; *Wilder's S.S. Co. v. Low*, 112 Fed. 161, 164; *State ex rel. v. Cook*, 78 Tex. 406, 414, 14 S. W. 996; *Hawkins v. Duncan*, 103 Ala. 398, 15 So. 828. So read, the conditional power to employ detectives granted State's Attorneys by the statute, would not be included within the proper functions of the City Attorney.

In this opinion JENNINGS, J., concurred.