[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue presented by the parties requires the court to place its oar in the roiled and murky waters surrounding the right of a plaintiff to object to a physical examination requested by a defendant in a personal injury action.
In this case, the defendants have requested pursuant to Practice Book § 13-11(b) that the plaintiff Linda Wallace (hereafter "plaintiff") undergo a physical examination by a physician designated by the defendants. The plaintiff has filed a written objection to the defendants' request objecting to the physician named by the defendants on the grounds that "a large part" of his practice consists of the performance of examinations of plaintiffs on behalf of insurance companies involved in litigation and as a result his opinion would not be "truly independent." The plaintiff has proffered the names of five physicians whom she would assent to as an examiner.
A defendant's request for a physical examination of the plaintiff in a personal injury action is governed by two sources of law: Practice Book § 13-11(b) and General Statutes § 52-178a. CT Page 14944 The language of these two provisions, and in particular the wording of § 52-178a, has been, in the absence of guidance from the appellate courts, the source of much head scratching and discord among Superior Court judges.
General Statutes § 52-178a provides that: "In any action to recover damages for personal injuries, the court or judge may order the plaintiff to submit to a physical examination by one or more physicians or surgeons. No party may be compelled to undergo a physical examination by any physician to whom he objects in writing submitted to the court or judge."
The Practice Book section contains a provision that is practically identical to the second sentence of the statute establishing the right of the plaintiff not to be compelled to undergo a physical examination by a physician he finds objectionable. Practice Book § 13-11(b), however, unlike the statute, establishes procedures for the filing of a request by the defendant and the filing of an objection by the plaintiff.[1] Moreover, it specifically states that, "The judicial authority may make such order as is just in connection with the request."
Not surprisingly, in the world of personal injury matters, the defendant will often request a physical examination of the plaintiff who is claiming injuries and the plaintiff will often object to the specific physician identified by the defendant to perform the examination. The issue confronting the courts is the extent of the plaintiff's right to object.
The judges of the Superior Court appear to be of three minds on this issue and their opinions fall into the following categories[2]: (1) the pragmatic approach which limits the plaintiff's right to object to grounds that are reasonable; SeeLeBlanc v. Cambo, 26 Conn. Sup. 338 (C. P.) (Mignone, J.),Fabozzi v. National Railroad Passenger Corp. , 3 CSCR 899 (1988) (Corradino, J.) and Moore v. Minton, 23 Conn. L. Rptr. No. 3, 109 (1998) (Silbert, J.); (2) the absolutist approach which holds that a plaintiff has an absolute and unconditional right to object to a particular physician; See Mulligan v. Goodrich,28 Conn. Sup. 11 (Super.Ct. 1968) (Parskey, J.), Dittman v.Spotten, 21 Conn. L. Rptr. 414 (1998) (Hurley, J.) and Agro v.Sender, 3 Conn. L. Rptr. 315 (1991) (Jones, J.) and (3) the modified absolutist approach which opines that while a plaintiff has an absolute right to object to a particular physician the CT Page 14945 exercise of that right can be sanctioned in extreme cases; SeePrivee v. Burns, 25 Conn. L. Rptr. 27 (1999) (Blue, J.).
The battlefield for the dispute is the relationship between the two sentences contained in General Statutes § 52-178a. How should one reconcile the defendant's right in appropriate circumstances to a physical examination of the plaintiff with the plaintiff's seemingly unlimited right to object to a particular physician?
After considering the language of the statute and the practice book rule, their history, and their relationship to each other and to the common law, I find myself firmly in the camp of the pragmatic approach. I conclude that the court has the authority to consider the nature and circumstances of the defendant's request for an examination and the reasons for the plaintiff's objection and enter whatever order as is just, including overruling the plaintiff's objection to a particular physician. The court can not, however, physically compel the plaintiff to submit to an examination by a physician whom he objects to in writing. Rather, the court may impose sanctions in accordance with Practice Book § 13-14 should the plaintiff fail to comply with a court order to undergo a physical or mental examination. I believe that this approach harmonizes the parties' respective rights in a way that adheres to the language and spirit of the statute and practice book and does justice to both parties.
 I ORIGIN AND HISTORY
Before commencing an analysis of the language of the statute and the Practice Book, it would be helpful to that analysis to review the origin and history of the defendant's right to request a physical examination of the plaintiff in a personal injury action. The wellhead for such a right lies with the common law. In Cook v. Miller, 103 Conn. 267 (1925), the Supreme Court recognized a trial court's discretionary right to order the plaintiff in a personal injury action to undergo a physical examination at the request of the defendant. The court reasoned that "To allow the plaintiff in such cases, if he sees fit to display his injuries to the jury, to call in as many friendly physicians as he pleases, and have them examine his person, and then produce them as expert witnesses on the trial, but at the CT Page 14946 same time to deny to the defendant the right in any case to have a physical examination of the plaintiff's person, and leave him wholly at the mercy of such witnesses as the plaintiff sees fit to call, constitutes a denial of justice too gross, in our judgment, to be tolerated for one moment." (Citation omitted.) Id., 272.
The right of a trial court to exercise its discretion and order a physical examination of the plaintiff in personal injury cases was eventually codified in 1955 through an amendment to § 70 of the Practice Book. After amendment, this section provided that, "In any civil action the court, upon motion of any party showing good cause therefor, may compel disclosure by an order . . . for the physical examination of a party claiming damages for personal injuries." This provision was changed slightly in 1961 and when it was recodified as § 168(4) of the 1963 Practice Book, whereupon it read, "For good cause shown, the court may compel disclosure by an order for the medical examination of any party to a personal injury action."
From its recognition in 1925, the discretionary right of a trial court to order an examination remained undisturbed for forty years until 1965 when the General Assembly enacted General Statutes § 52-178a. Except for a technical revision passed in 1982, the statute is the same as the one causing such consternation today. The legislation placed a limit on the trial court's discretion to order examination of a plaintiff in a personal injury action by providing such a plaintiff with the right not to be compelled to submit to a physical examination by a physician to whom he has filed a written objection.
In 1978, the relevant Practice Book section was substantially amended so that it reads as it does today. Any party adverse to the plaintiff in a personal injury action may file a request with the court that the plaintiff submit to a physical or mental examination, which request shall be complied with unless objected to in writing within ten days. The trial court retains its right to exercise its discretion to "make such order as is just, in connection with the request." However, the Practice Book section, now § 13-11(b), tracks the language of the statute that, "No plaintiff shall be compelled to undergo a physical examination by any physician to whom he or she objects in writing."
 II CT Page 14947 LANGUAGE
The pivotal fact revealed by a review of the above history is that a trial judge for almost 75 years has had the discretion to order a physical examination of a plaintiff in a personal injury action. The question is how to interpret, in light of this history, the language of the statute enacted in 1965 which added a limit to that discretion and the Practice Book rule which subsequently acquiesced to that limitation.[3]
The decisions of the Superior Court which have adopted the absolutist and modified absolutist approaches have focused on the fact that the language of the limitation is unconditional on its face; it does not expressly admit to any exceptions. See e.g.Mulligan v. Goodrich, supra, 28 Conn. Sup. 13 and Privee v.Burns, supra, 25 Conn. L. Rptr. 37.[4] Under this view, when a plaintiff objects in writing to a particular physician the court lacks the discretion to overrule that objection regardless of the reasonableness of the basis for the objection.
The proponents of this view tout its faithfulness to the literal language of the statutory limitation. But I believe that they have not been literal enough in reading the precise words used in the statute.
The statute's first sentence states, "In any action to recover damages for personal injuries, the court or judge mayorder the plaintiff to submit to a physical examination by one or more physicians or surgeons." (Emphasis supplied.) The second sentence provides, "No party may be compelled to undergo a physical examination by any physician to whom he objects in writing submitted to the court or judge." (Emphasis supplied.) The limitation placed on the judge's discretion by the second sentence does not undermine the court's authority to order a physical examination; it prohibits the court from compelling the plaintiff to attend such an examination. I read this language as authorizing a trial court to overrule a written objection to a particular physician and order the plaintiff to attend but not allowing the court to physically compel that attendance.
Should the plaintiff fail to heed the court's order, the court may consider appropriate sanctions pursuant to Practice Book § 13-14, such as awarding the defendant his costs and reasonable attorney's fees, entering a nonsuit against the plaintiff or precluding the plaintiff from introducing his own CT Page 14948 expert medical witness. See Practice Book § 13-14(a) which provides that "If any party . . . has failed to submit to a physical or mental examination . . . the judicial authority may, on motion, make such orders as the ends of justice require" and Practice Book § 13-14(b) which gives examples of the types of orders that the court may enter. In light of the language of the statute and the Practice Book, the court may not, however, hold the plaintiff in contempt in order to coerce the plaintiff to submit to a physical examination.
This construction of the statutory provisions is also supported by the language of the Practice Book § 13-11. This rule, while following the wording of the second sentence of the statute, specifically states that the court may "make such order as is just, in connection with the [defendant's] request." Viewing the plaintiff's right to object as absolute is incompatible with this express grant of judicial discretion.
The establishment of reasonable limits on the plaintiff's right to object is also dictated by common sense and by basic canons of statutory construction. A fundamental problem with the absolutist view of the plaintiff's right to object is that it allows the plaintiff to object to any and all physicians proposed by the defendant and results in no physical examination at all when the plaintiff does so. It is this "reductio ad absurdum" that most troubles the adherents of the pragmatic approach. SeeLeBlanc v. Cambo, 26 Conn. Sup. 340-41. The exception (the plaintiff may object in writing to particular physicians) ends up swallowing the rule (the defendant in personal injury actions has a right to a physical examination of the plaintiff).
The literal interpretation that I suggest avoids this absurd result. While a plaintiff can not be physically compelled to undergo a physical examination by a objectionable physician, he can be ordered by a court to do so if his objection is unreasonable and he can by sanctioned if he does not attend. As a result, a defendant's right, absent reasonable objection, to an examination of the plaintiff is vindicated.
Principles of statutory construction also counsel such an interpretation of the relevant language. "`In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result.'" King v. Board of Education, 203 Conn. 324, 332-33
(1987). "If there are two possible interpretations of a statute, CT Page 14949 we will adopt the more reasonable construction over one that is unreasonable." State v. Uretek, Inc., 207 Conn. 706, 719 (1988). "When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid." Bridgeman v. Derby,104 Conn. 1, 8 (1926) (Citing Sutherland on Statutory Construction [Ed. 1891] § 323). Each of these statements is a variation of the same theme: If possible, construe a statute so that the result is reasonable.
A second well-established canon of statutory construction is that a statute which alters the common law should be strictly construed. "The rule of statutory construction is that a statute should not be construed as altering the common law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express." (Citations and internal quotation marks omitted.) State v. Kish, 186 Conn. 757, 764 (1982). "The legislature may, of course, within constitutional limits, alter the common law by statute. In the interests of continuity and stability in the legal system, however, this court generally presumes that the legislature, in adopting a statute, did not have the intention to effect a significant change in a fundamental common-law principle. This presumption may be overcome if the legislative intent is clearly and plainly expressed." (Citations and internal quotation marks omitted.)Elliott v. City of Waterbury, 245 Conn. 385, 402-403 (1998)
The interpretation of the statutory language given by both the absolutist and modified absolutist approach would effectuate a radical change in the common law principle without the accompanying clear and plain legislative intent. As noted previously, the trial court possessed the right at common law to exercise its discretion in considering a request by a defendant in a personal injury action for a physical examination of the plaintiff. See Cook v. Miller, supra, 103 Conn. 267. The absolutist approach would obliterate that right in any case in which the plaintiff filed an objection to a particular physician in writing. The modified absolutist approach would emasculate the right in all but the most "extreme cases." See Privee v. Burns, supra, 25 Conn. L. Rptr. 38.
 III LEGISLATIVE HISTORY CT Page 14950
Both the absolutist approach and the modified absolutist approach assert that a clear indication of a legislative intent to remove judicial discretion can be found in the legislative history of General Statutes § 52-178a. A review of that legislative history demonstrates that it is anything but clear.
A comprehensive examination of the legislative history of §52-178a can be found in Privee v. Burns, supra, 25 Conn. L. Rptr.30-32. Rather than repeat the entire discussion here, I will emphasize the salient points. The statute was introduced as H.B. 3757 "An Act Concerning Physical Examinations in Actions to Recover Damages for Physical Injuries" and provided as follows:
 In an action to recover damages for personal injuries, if the defendant shall present to the court satisfactory evidence that he is ignorant of the nature and extent of the injuries complained of, the court, by order, shall direct that the plaintiff submit to a physical examination by one or more physicians or surgeons to be designated by the court or judge, and such examination shall be had and made under such restrictions as to the court or judge shall seem proper. Any party to be examined shall, if he desires, be entitled to have such examination in the presence of his own personal physician and such relative or other person as the court may direct. No party shall be compelled to undergo a physical examination by any doctor to whom he objects in writing; provided such objection is made in good faith.
With practically no discussion, the bill was unanimously approved by the House of Representatives. In the Senate, again with extremely little discussion, the bill was substantially amended to read as today's statute is currently worded. The amended bill passed both chambers and eventually became §52-178a.
The courts that have found a plaintiff's absolute right to object to particular physicians place great emphasis on the removal by the legislature of the requirement contained in the initial bill that the plaintiff's objection to a physician be made in good faith. See e.g. Dittman v. Spotten, supra,21 Conn. L. Rptr. 414 and Privee v. Burns, supra, 25 Conn. L. Rptr. 31-32. The legislative history, however, gives no indication as to why this particular change was made in the bill. These Superior Court decisions are left to infer from the change that it was done CT Page 14951 intentionally and that it demonstrates a desire to make the plaintiff's right unconditional.
While the rejection of specific language may be evidence of legislative intent, it is by no means conclusive. It is not universally true that the rejection of language means the legislature intended that a statute not be interpreted to resemble the rejected proposal.[5] In some instances, courts have found the repudiation of language by the legislature to be persuasive evidence of its intent, see e.g. INS v.Cardoza-Fonseca, 480 U.S. 421, 441-443 (1987), and at other times courts have spurned this approach, see e.g. Robinson v.Unemployment Security Board of Review, 181 Conn. 1, 24 (1980). See also W. Eskridge, Jr., "Interpreting Legislative Inaction," 87 Mich. L. Rev. 67, 132-137 (1988) (In Appendix 3, Professor Eskridge collects United States Supreme Court cases decided between 1961 and 1988 in which the Court considered the argument that it should not interpret a statute to embrace a meaning rejected by Congress and finds 65 cases in which the Supreme Court inferred significance from the rejection by Congress and 28 cases in which the Court inferred no significance.) In fact, numerous commentators on the role of legislative history in statutory construction believe that a rejected proposal offers little guidance concerning legislative intent. Id., 108 ("Legislative inaction usually tells us very little about actual legislative intent.") and M. Radin, "Statutory Interpretation," 43 Harvard L. Rev. 863, 873 (1930) ("Successive drafts of a statute are not stages in its development. They are separate things of which we can only say that they followed each other in a definite sequence, and that one was not the other. But that fact gives us little information about the final form, since we never really know why one gave way to any other.")
The fact that the legislature rejected similar language is often not helpful in discerning legislative intent because the legislature may have rejected the proposal for a myriad of reasons other than that it contained the precise wording at issue. See Robinson v. Unemployment Security Board ofReview, supra, 181 Conn. 24. In this case, the General Assembly may have spurned the initial bill because of its other provisions, such as the procedure it established for allowing the examined party to have his personal physician or relative present during the examination.
In this case, we do not know the reason for the change in CT Page 14952 language by the legislature because very little was said about the alteration at the time it was made. Without a debate or statements explaining the purpose of an amendment to illuminate the legislative intent, the bare fact that language was deleted is not particularly helpful. See D. O'Connor, "The Use of Connecticut Legislative History in Statutory Construction," 58 Conn. B.J. 422, 437-38 (1984). "[T]o accept a construction based on changes made without explanation . . . would be to abandon the caution that has marked our review of the legislative history and to indulge in speculation on the meaning of mute intermediate legislative maneuvers." (Citation and internal quotation marks omitted.) Robinson v. Unemployment Security Board of Review, supra, 181 Conn. 24.
What was said at the time of the amendment, however, indicates that the original bill was rejected because of its language concerning the procedure for the examination. See remarks of Senator Falsey that, "[T]he amendment basically removes that language in the first few lines which would detail the appearance at the doctor's office and leaves in the main thrust of the bill." 11 5. Proc., Pt. 6, 1965 Sess., p. 2290. But even this statement is opaque. There are no statements by anyone in the legislative history that the bill was changed due to disagreement with the requirement that the plaintiff's objection to a particular physician be made in good faith.
 IV THE OBJECTION IN THIS CASE
As noted previously, the defendants in this case have filed a request pursuant to Practice Book § 13-11(b) that the plaintiff submit to a physical examination. The pleadings disclose that plaintiff claims she was assaulted while ascending a stairway in a building owned and managed by the defendants. The plaintiff asserts that the defendants were negligent in failing to maintain adequate security for the building and that she suffered severe and permanent injuries, including a fractured right patella, a fractured rib, a scalp laceration, a concussion, acute anxiety reaction, post-traumatic stress disorder and post-concussion syndrome, as a result of the defendants' negligence.
The defendants' request asks that the plaintiff be ordered to undergo a physical examination with Dr. Alan Goodman "with regard to the plaintiff's claims of injury and permanency to the right CT Page 14953 knee." The plaintiff objects to an examination by Dr. Goodman on the grounds that he would not be able to provide the court with an opinion which is "truly independent" because "a large part of Dr. Goodman's practice consists of the performance of examinations of plaintiffs on behalf of insurance companies involved in litigation".
There exists no requirement in either The Practice Book rule or in the statute that the physician proposed by the defendant be "independent." The issue, therefore, is whether an objection on that basis is reasonable in light of the nature of the request and the underlying circumstances.
The court finds that is unreasonable to prohibit the defendants from selecting a physician solely because the physician has performed examinations in the past for insurance companies involved in litigation. It would be natural to expect a defendant to choose a physician that his attorney has worked with in the past or whose work is familiar to his attorney. The plaintiff in this case is completely free to choose any physician she wants to serve as her expert, even one with strong ties to plaintiff personal injury attorneys. Allowing the defendants similar freedom in selecting their expert, absent reasonable objection on other grounds, simply levels the playing field.
The performance of past work for insurance companies does not in and of itself make a physician biased or untrustworthy. Any issues of bias or interest with respect to a particular physician are more appropriately left for elucidation at trial. See Looneyv. National Railroad Passenger Corp. , 142 F.R.D. 264, (D. Mass., 1992). The plaintiff is free to cross-examine the physician or seek to introduce extrinsic evidence at trial as to the physician's relationship with insurance companies to the extent it shows bias or interest. See State v. Shipman, 195 Conn. 160,163 (1985).
The plaintiff points to other Superior Court decisions that have sustained objections to a physician on the grounds that a substantial portion of the physician's work is on behalf of insurance companies. See Dittman v. Spotten,21 Conn. L. Rptr. 414 (1998) (Hurley, J.) and Fabozzi v. National RailroadPassenger Corp. , 3 CSCR 899 (1988) (Corradino, J.). Both of these opinions base their rulings on the legislative intent they glean from public hearing testimony presented to a legislative committee concerning the precursor to General Statutes § 52-178a. CT Page 14954 The testimony was by Edward Smith, a Hartford attorney and Secretary of the Connecticut Trial Lawyers Association, before the Judiciary and Governmental Functions Committee and highlighted problems he perceived that resulted from the practice of certain insurance companies using one or two doctors for all their medical examinations. Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 2, 1965 Sess. pp. 509-11. This testimony standing alone is a thin reed upon which to ground a sweeping ruling that prohibits a defendant from using any physician whose practice contains a significant portion of work on behalf of insurance companies.
In the past, the Connecticut Supreme Court has not been receptive to the use of testimony at legislative hearings to determine legislative intent. See Hartford Electric Light Co. v.Water Resources Commission, 162 Conn. 89, 98 (1971) (As to occurrences at legislative public hearings, these are not admissible as a means of interpreting a legislative act and may not be considered.") and Baker v. Norwalk, 152 Conn. 312, 316
(1965) ("This court . . . has held without exception that statements at [legislative] committee hearings are not admissible in the interpretation of a legislative act."). While the absolute prohibition against using testimony at legislative hearings has loosened in recent years, the use of such testimony remains restricted to those occasions when such testimony provides "particular illumination" of legislative intent. In re JessicaM., 217 Conn. 459, 472 n. 10 (1991) ("Although we ordinarily restrict our review of a statute's legislative history to the discussions conducted on the floor of the House of Representatives or of the Senate, we have occasionally included in our considerations evidence of testimony of individuals addressing the proposed enactment in committee hearings when . . . such testimony provides particular illumination for subsequent legislative actions on proposed bills.") See alsoElections Review Committee of the Eighth Utilities District v.FOIC, 219 Conn. 685, 695 n. 10 (1991). There is nothing about Attorney Smith's testimony or the context in which it was made that renders it particularly illuminating about the legislature's intent.
The plaintiff's objection to the defendants' request for a physical examination of the plaintiff by Dr. Goodman is hereby overruled. In accordance with Practice Book § 13-11(b), the defendants shall file a request specifying the time, place, manner, conditions and scope of the examination to be conducted CT Page 14955 by Dr. Goodman.
BY THE COURT
Judge Jon M. Alander